[Filed April 18, 1892.]

## PHILIP WIST *v.* GRAND LODGE A. O. U. W.

MUTUAL BENEFIT SOCIETIES—NEW LEGISLATION—EXERCISE OF POWERS.—The right of mutual benefit societies to alter, amend, or repeal their laws, or to enact others consistent with the purpose for which they are organized, is well recognized; but this right must not be so exercised as to operate as a repudiation of their obligations, or to work a forfeiture of rights previously vested in their members.

IDEM—RETROACTIVE LAWS—IMPOSSIBILITY OF COMPLIANCE.—New legislation of mutual benefit societies will not be construed as retroactive if such a result can be avoided; but even if such construction be inevitable, the law will not be allowed to apply to a case where, without any fault of his own, it is impossible for a member to comply with its requirements.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals.   Affirmed.

*W. D. Hare, Geo. H. Durham,* and *H. G. Platt,* for Appellant.

The change made by the defendant in its fundamental law relating to the persons whom a member is entitled to designate as his beneficiary, is binding upon a member who had theretofore made a designation in conflict with the amended law of the order, and such change is also conclusive of the rights of such beneficiary.   (Bacon Ben. Soc. § 304; *Harley* v. *Heist,* 86 Ind. 196; S. C. 44 Am. Rep. 285; *Damron* v. *Penn. Mut. Ins. Co.* 99 Ind. 478; *Byrne* v. *Casey,* 70 Tex. 247.)

The pleadings show that Freeman agreed in writing "that compliance on my part with all the laws, regulations and requirements which are or may be hereafter enacted by said order, is the express condition upon which I am to be entitled to participate in the beneficiary fund, and have and enjoy all the other benefits and privileges of said order." We say then that by signing that agreement he not only recognized the laws in force at the time he joined, but he contracted with reference to those which might be enacted and thereby made them become a part of his contract. (Niblack Mut. Ben. Soc. § 166; *Supreme Commandery* v. *Ainsworth,* 71 Ala. 436; S. C. 46 Am. Rep. 332; *Durian* v. *Central Verein,* 7 Daly, 168; *Byrne* v. *Casey,* 70 Tex. 247; *Miller* v. *Assurance Association,* 42 N. J. Eq. 459; *Splawn* v. *Chew,* 60 Tex. 532.) We insist that inasmuch as the laws of this order, which are before the court, show that the plaintiff had his right of appeal from the decision of the grand lodge to the supreme lodge, he must exhaust that remedy before he can maintain this action; and in order to make his complaint state facts sufficient to constitute a cause of action, he should have averred that he had appealed from the decision of the grand lodge, which he says refused to pay his claim, to the appellate body, and that that body had also declined to give him any relief. (Niblack Mut. Ben. Soc. §§ 130, 133; *Poultney* v. *Bachman,* 31 Hun, 49; *Harrington* v. *Association,* 70 Ga. 340; *White* v. *Brownell,* 2 Daly, 329; *Redmen* v. *Schmidt,* 57 Md. 98.)

*W. S. Relfe,* and *Ronald & Piles,* for Respondent.

Where the primary purposes of the association of the Ancient Order of United Workmen is to provide a benevolent fund to be paid on the death of each member and the avowed fraternal character of the organization is merely incidental thereto, it is a life insurance company. (*State* v. *Bankers etc. Assoc.* 23 Kan. 499; Folmers Appeal, 87 Pa. 133; *Ill. Masons Ben. Socs.* v. *Winthrop,* 85 Ill. 537; *Illinois etc. Soc.* v. *Bald-*

*win,* 85 Ill. 479; *State* v. *St. Louis etc. Asso.* 6 Mo. App. 163; *Bolton* v. *Bolton,* 73 Me. 299; Bacon Ben. Soc. § 51; *Conn. Mut. Life Ins. Co.* v. *Schaefer,* 94 U. S. 457; *Holland* v. *Taylor,* 111 Ind. 121; *Supreme Lodge* v. *Schmidt,* 98 Ind. 374; *Presbyterian Assur. Fund* v. *Allen,* 106 Ind. 593; *State ex rel.* v. *Merchants' etc. Soc.* 72 Mo. 159; *Elkhart etc. Soc.* v. *Houghton,* 103 Ind. 291; 53 Am. Rep. 514; *Comw.* v. *Wetherbee,* 105 Mass. 149; *Block* v. *Valley Mut. Ins. Asso.* 52 Ark. 204; 20 Am. St. Rep. 166; *Rockhold* v. *Canton Mut. Ben. Soc.* 129 Ill. 459; *Goodman* v. *Jedediah Lodge,* 67 Md. 127; *Bauer* v. *Samson Lodge,* 102 Ind. 262; *Brace* v. *Chartrand,* 12 Law Rep. Ann. 209.)

The defendant claims a forfeiture on the ground of the failure of the assured to comply with an alleged law, enacted subsequent to the issue of the certificate or policy. By all rules of interpretation and construction, the law referred to, which has been already quoted, even if it took effect prior to Freeman's death, could not be construed to have any other than a prospective operation. It is a settled rule that all laws are prospective in the operation, unless made and expressly declared in their terms to be retroactive. There is nothing of all this in the provision alluded to. (Endlich Interp. Stat. §§ 271–273; *People* v. *Supervisors,* 63 Barb. 85; *State* v. *Greer,* 78 Mo. 188; *Garrick* v. *Chamberlain,* 97 Ill. 620; *Chicago* v. *Ramsey,* 87 Ill. 348.)

While a subsequent law, because of the assent of the member, may add new terms or conditions to a certificate, terms or conditions reasonably calculated to promote the general good of the membership, and may be valid and binding, it does not follow that a law operating a destruction of a certificate or a deprivation of all the rights under it would be of any force. (*Korn* v. *Mutual Aid Society,* 6 Cranch, 192; *Supreme Commandery* v. *Ainsworth,* 71 Ala. 436; 46 Am. Rep. 332; *Kent Quicksilver* v. *Mining Co.* 78 N. Y. 178; *Morrison* v. *Wisconsin O. F. Mutual etc. Co.* 59 Wis. 162; *Warnebold* v. *Grand Lodge A. O. U. W.* 48 N. W. Rep. 1069, Iowa, May 27, 1891; Cook Corp. § 700 a; *People ex rel.*

v. *Fire Department*, 31 Mich. 465; *Skillings* v. *Massachusetts Benevolent Association*, 146 Mass. 217; *People ex rel.* v. *Crockett*, 9 Cal. 113.)

Where a corporation issues a policy of insurance payable to a third person on the death of the assured, and the assured pays all of his assessments, which are accepted by the corporation with knowledge of all the facts connected therewith, it cannot, after the death of the assured, resist payment to the beneficiary upon the ground that he is neither a relative nor a dependent of the assured, and that its charter authorizes it to pay such persons only. (*Eastman* v. *Prov. Mut. Rel. Assn.* 65 N. H. 176; 23 Am. St. Rep. 29; *Massey* v. *Rochester Mut. Soc.* 34 Hun, 254; *Denver Ins. Co.* v. *McClellan*, 9 Col. 11; 59 Am. Rep. 134; *Camden & A. R. R. Co.* v. *May's Landing*, 48 N. J. L. 530; *Wood* v. *Corry Water Works*, 44 Fed. Rep. 146; *Morrison* v. *Wisconsin O. F. Mut. Ins. Co.* 59 Wis. 162; *Bradley* v. *Ballard*, 55 Ill. 418; 8 Am. Rep. 656; *Darst* v. *Gale*, 83 Ill. 140; 2 Morawetz, Corp. §§ 689–694.)

If a private corporation has accepted and enjoyed the full benefit of a contract, the same having been fully performed by the other party thereto, who has no adequate relief at his command, the defense of *ultra vires* may be disallowed. The corporation is estopped. (*Reese* v. *Mut. Ben.* 26 Barb. 556; *Buckbee* v. *U. S. Ins. Co.* 18 Barb. 541; *Insurance Co.* v. *Jones*, 62 Ill. 460; *Ingersoll* v. *Knights Golden Rule*, 47 Fed. Rep. 272.)

The other proposition urged by appellant, to wit, that no cause of action is stated, and that the circuit court had no jurisdiction because any member is given the right to appeal from the decision of the supreme lodge, is untenable. This provision in the laws of the order does not refer to the enforcement of any specific contracts of the character here in suit, but only to the methods of dealing with the members in their personal relations as such with the order. Again, if it had any force or effect as contended, the provision is not mandatory, but merely permissive. It would

be a remedy merely cumulative and not exclusive.  (*Malcom* v. *Rogers*, 5 Cow. 193; 15 Am. Dec. 464; *Medbury* v. *Swan*, 46 N. Y. 202; *State* v. *R. R. Co.* 51 Mo. 532; *Spaulding* v. *Suss*, 4 Mo. App. 541; *Baldwin* v. *Mayor*, 2 Keyes, 410; *Bradfield* v. *Union Mutual etc.* 9 Wkly N. Cas. 436; *Rosenberger* v. *Wash. Mut. Fire Ins. Co.* 87 Pa. St. 207; *Bauer* v. *Samson Lodge*, 102 Ind. 262; *Supreme Council* v. *Garrigus*, 104 Ind. 133; 54 Am. Rep. 298.)

Lord, J. — This is an appeal from a judgment of the circuit court for Multnomah county in favor of the plaintiff in an action brought to recover the sum of two thousand dollars, the amount alleged to be due on a benefit certificate which had been issued by the defendant society to Frederick Freeman for the benefit of the plaintiff.   The cause was tried by stipulation before the court, without the intervention of a jury.   In substance, the facts found show that at different times during his membership in the association, Frederick Freeman held two of its benefit certificates.   In the first certificate which was issued to him he had designated his wife, Anna Freeman, as his beneficiary; but when she ceased to be his wife, he surrendered that certificate and took a second certificate, in which he designated the plaintiff Philip Wist as his beneficiary.  His application upon which the certificate was issued expressly provided that "compliance on his part with all the laws, regulations and requirements which are or may hereafter be enacted by said order is the express condition upon which I am entitled to participate in the beneficiary fund, and have and enjoy all the other benefits and privileges of said order."   In July, 1888, the society changed its law relating to the classes of persons who might be designated as beneficiaries, to read as follows:  "Each member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall, in every instance, be one or more members of his family, or some one related to him by blood, or who shall be dependent

upon him." A circular letter of the grand recorder, issued in 1889, and a few months before Freeman's death, notified the members of his jurisdiction of the change in the law relative to beneficiaries. Shortly thereafter, Freeman died in good standing, with all dues and assessments required of him fully paid and discharged. The plaintiff Philip Wist was not a member of his family nor related to him by blood, nor dependent upon him. Freeman never changed his last beneficiary certificate after it was issued to him. There is no claim that he did not comply with all the laws of the order, except that he did not change his beneficiary certificate by designating some one of the specified classes, which the circular letter undertook to declare that members holding such certificates must do, otherwise that they were worthless. At the date the certificate was issued to Freeman in which he had designated the plaintiff as his beneficiary and continuously up to the date of his death, Freeman had no family nor any one related to him by blood or dependent upon him. The plaintiff was at the time he was designated as beneficiary in the certificate, and now is, a member of the order, and Freeman when he died was indebted to the plaintiff in the sum of six hundred and fifty dollars. The law of the order in force long prior to the death of Freeman, as well as at present, provides: "In the portion of this fund, namely, two thousand dollars, to which the beneficiaries of a deceased member are entitled, the members themselves have no individual property right; it does not constitute a part of their estate to be administered, nor have they any right or control over the same, except the power to designate the person or persons to whom as beneficiaries the same shall be paid at the death of the member. The beneficiaries thus designated have no vested right in said sum until the death of the member gives such right, and the designation may be changed by the member in the method prescribed by the laws of the order at any time before his death." This

declaration of the law of the order in respect to the rights of beneficiaries in the fund to be accumulated as not being a vested right, is in accord with the general principles of the law as declared by the courts, applicable to benefit or charitable associations. Except as restricted by the constitution and by-laws of the order, a member may exercise his power of appointment without other limit; he may designate as his beneficiary whomsoever he may choose, or he may change such beneficiary by designating another at his pleasure. The only limitation on the exercise of this valuable and important power is the organic law of the society, or the rules and regulations adopted in compliance therewith. During the lifetime of the member, his beneficiary has no vested interest in the fund to be accumulated and paid at his death which would prevent him from changing such beneficiary without his consent, or which would prevent the society from changing its rules and permitting changes of beneficiaries. The laws of the society in respect to the change of beneficiaries are for the protection of its own interests and welfare, and as against such laws the beneficiaries have no such vested rights or interest in the fund, during the life of the member, as will prevent the society from determining the course of such fund. In consequence of this right of a change of beneficiary by the member, all that the beneficiary can have during his life is a mere expectancy dependent upon the will of the holder of the certificate. It is these considerations that constitute the distinction between benevolent organizations and the regular life insurance companies. This distinction has been thus expressed by Mitchell, J.: "The essential difference between a certificate of membership in a beneficiary association and an ordinary life policy is, that in the latter the rights of the beneficiary are fixed by the terms of the policy, while in the former they depend upon the certificate and the rights of the members under the constitution and by-laws of the society. In the

one case, the rights of the beneficiary are fixed and vested from the moment the policy takes effect; in the other, they are subject to such changes as the law of the association authorizes the member to make. All that a beneficiary has during the life of the member, owing to his right of revocation, is a mere expectancy dependent upon the will of the holder of the certificate. This expectancy is not property." (*Masonic Mut. Ben. Soc.* v. *Burkhart,* 110 Ind. 192.) So that it appears that the designation of beneficiaries by members of such associations takes effect only upon the death of such members, and that the certificate only confers upon the beneficiary a contingent expectation, liable to be divested either by the death of the beneficiary before the member or by a revocation of the appointment and a naming of another beneficiary. Upon the death of the member, the certificate takes effect, so far as to vest in the beneficiary an absolute right to the benefit money. (Bacon Ben. Soc. & Life Ins. § 155.) Nor have the members of such societies, as such, any interest or property in the benefit fund, but simply the power to appoint some one to receive it. But while it is true that the right of the members of benefit societies in the sums agreed to be paid at death is simply the power to appoint a beneficiary, and that the constitution or charter and the by-laws are the foundation and source of such power, yet, as Mr. Bacon says, "the cases must not be understood to hold that the member of a benefit society has not a property right in the contract of membership, under which he has the power to designate a recipient of the benefit to be paid, because of such membership and under the contract. The right of the member in this contract is a valuable one, which the courts will at all times recognize and protect, although strictly speaking such member has no property interest in the benefit paid, or subject of the power. The membership which includes the right to pay the agreed consideration and to appoint a person to take the benefit, must be

regarded as a species of property, and is to be distinguished from the benefit or sum paid itself in which the member has no property." (Bacon Mut. Ben. Soc. & Life Ins. § 237.)

At the time when Freeman designated the plaintiff as his beneficiary, and the society issued to him a certificate accordingly, it was a valid exercise of his power of appointment. There was at that date no rule or regulation of the society in conflict with his right to make such designation of his friend and fellow member, his beneficiary; and if Freeman without revoking his appointment of the plaintiff had died before the society had enacted the law in question limiting the appointment of beneficiaries to a certain specified class, there is no doubt or dispute as to its liability. The general rule undoubtedly is, that a designation of a beneficiary, valid at its inception, remains so; and as Freeman never revoked the appointment of the plaintiff as his beneficiary unless the after-enacted law required Freeman to change his beneficiary so as to conform to the classes specified and become a part of his contract, and the law is valid in so far as it affected his contract, the appointment of the plaintiff as his beneficiary is still valid, and the certificate took effect upon the death of Freeman, and vested in the plaintiff an absolute right to the benefit money.

The contention for the defendant is, that the law enacted by the society subsequently to the issuance of Freeman's benefit certificate, relating to the persons whom a member is entitled to designate as his beneficiary, became a part of his contract and required him to make a designation of a beneficiary in conformity therewith, and that on his failure to do so before his death, without leaving any one capable of taking such benefit certificate, it reverted to the beneficiary fund of the supreme lodge. This contention is founded on the assumption that the law in question was retroactive and intended to annul the appointment of beneficiaries theretofore made by members which did not belong to the classes specified in such law. The benefit

certificate which was issued to Freeman was based upon his written application.  By his application, he agreed to comply with "all laws, regulations, and requirements which are, or hereafter may be, enacted," and in consideration of this, among other things, the defendant issued to him a beneficiary certificate.  Reading the two together as constituting his contract, Freeman agreed with the society, as a part thereof, that he would comply with or be bound by its laws of future enactment as if they were already existing.  But it is apprehended that contracts of this kind differ but little, if any, from contracts in other such societies, where the power is reserved to alter or amend, enact or repeal its laws.  A person who becomes a member of such an association is bound to take notice of its laws, and especially those which affect his rights and interests.  These laws are elements of his contract, and determine the extent of his duties, rights, and liabilities.  The right of such societies to alter, amend, or repeal laws, or to enact others consistent with the purpose for which they are organized, is well recognized.  The power is essential to their continued existence and well being, and except as restrained by the fundamental law of their organizations, may be exercised at all regular meetings.  This power to amend laws, or to repeal them, is inherent and continuous for all proper objects.  No member has a right to presume that the laws of his order will remain unchanged, when the promotion of its interest and welfare may require a change.  "The power of the society to enact its laws," says Mr. Niblack, "is continuous, residing in all regular meetings of the society so long as it exists.  Any meeting can, by a majority vote, modify or repeal the law of a previous meeting, and no meeting can bind a subsequent one by irrepealable acts or rules of procedure." (Niblack Mut. Ben. Soc. § 124.)  So that it may be said that the power to alter or amend laws, or to repeal them, when exercised in a proper way and for the welfare of the society, is an

incident of its existence, and that when so exercised, such laws are binding on its members, except when forbidden by the organic act of the society, or contrary to the laws of the land. As ELLIOTT, J., said: "We do not affirm that a benefit society may, by a change in its by-laws, arbitrarily repudiate an obligation created by a policy of insurance; but we do affirm, where a change is regularly made in its by-laws, and the motive which influences the change is an honest one, to promote the welfare of the society, and the members are all given an opportunity to avail themselves of the change, no actionable wrong is done the members or their beneficiaries." (*Supreme Lodge K. P.* v. *Knight,* 117 Ind. 497.)

There is no power in the society to amend or enact laws which shall work any repudiation of its obligation. It resides in the society for the purposes of carrying out the objects for which it was formed; and, when the power is expressly reserved in the charter, it is not construed as intended to reserve the power to avoid its contracts, or work the destruction of vested rights. So that a party's contract of insurance may be modified or varied by a subsequent law, and he be bound by it, either through the reserved power in the society to amend or enact such law, or by his contract with reference to future enactments, when it does not operate as a repudiation of its contracts, or a complete deprivation of the member's rights. As the rights of the plaintiff are derived from the contract of Freeman with the society, and as his benefit certificate, designating the plaintiff as his beneficiary, was issued before the enactment of the law limiting the persons whom a member is entitled to designate as his beneficiary, it now becomes necessary to examine this subsequent law, and ascertain whether it is applicable to benefit certificates of members which were issued before its enactment, and if so, to what extent. That law provides: "Each member shall designate the person or persons to whom the beneficiary fund due at his death

shall be paid, who shall in every instance be one or more members of his family, or some one related to him by blood, or who shall be dependent upon him." This language is wholly prospective in its operation. It is only intended to affect the power to appoint beneficiaries and limit its exercise after the law passed. "Each member shall designate," refers not to a past but a future act to be performed by him,— that is, whenever a member shall exercise his power of appointment under this law, he shall designate a beneficiary of the classes enumerated. It applies as well to old members, revoking a former appointment and naming another as his beneficiary, as to new or old members who have never exercised their power to appoint a beneficiary. The law does not undertake by its terms to disturb what has been done; it does not nullify previous appointments; it only undertakes to limit to the classes specified the power to designate beneficiaries, whenever it shall be exercised by a member. It is a settled rule of construction that laws will not be interpreted to be retrospective, unless by their terms they are clearly intended to be so. They are construed as operating only on cases or facts which come into existence after the laws were passed. Every statute, it has been said, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect of transactions or considerations already passed, must be presumed, out of respect to the legislature, to be intended not to have a retroactive operation. (Endlich Interp. Stat. § 273.) Rights will not be interfered with unless there are express words to that effect. It is not enough that upon some principles of interpretation a retroactive construction could be given to the law, but the intent to make it retroactive must be so plain and demonstrable as to exclude its prospective operation. "It is not enough that general terms are employed broad enough to cover

past transaction," for laws "are to be construed as prospective only, if possible." (Sedg. Stat. & Const. Law, 161.)

In fact, so great is the disfavor in which such laws are held, and so generally are they condemned by the courts, that they will not construe any law, no matter how positive in its terms, as intended to interfere with existing contracts or vested rights, unless the intention that it shall so operate is expressly declared, or is to be necessarily implied. As the law of the society is prospective in its operation, it did not affect Freeman's contract with the defendant. It did not, by its terms, nor by implication, require him to change his policy. It would only have affected his contract in the event he should have revoked the appointment of the plaintiff as his beneficiary, and then only to the extent of requiring him to appoint a beneficiary that should belong to the specified classes. There is not a word in the law requiring any member to make a change of his beneficiary; or in case of his failure to do so, as contended for by the appellant, that his benefit certificate reverted to the society. It may be conceded that Freeman was bound by all subsequent laws enacted, but as the law in question is not retroactive, it does not affect his contract. It only affects him or any other member of the society in the issue of certificates after its passage. While there is no pretense that this contract was a cover for speculation, or a wager policy, it may be conceded that the object of the law was to discourage wager policies. And it was said by counsel, unless it was held "that the society could amend its laws so as to discourage wager policies, it will be involved in a maze of difficulties." By giving this law a prospective operation, it will greatly cut off the opportunities for such speculation in life insurance policies, and will in a great measure remedy the evil it was designated to abate, without denying the power of the society to amend its laws, or to enact others for the promotion of its interests and welfare.

But we may go further, and admit that the law is retro-active; that it was intended, as claimed by counsel, to affect certificates, naming beneficiaries, not of the classes enumerated, and requiring the holders of such certificates to designate others conformable to such law; otherwise upon their failure to so do, that the fund payable under their certificates to such beneficiaries as do not belong to any of such classes would descend under the laws of the society or revert to it; and still we do not think such a law would be construed to affect the certificate of Freeman, or the class to which he belongs, or their beneficiaries. It is only addressed retroactively to those who can comply with its terms; for while it might have the effect to modify or vary the contracts of all such, it does not operate as a destruction of their power to appoint a beneficiary, or as a repudiation of the obligation of the society. They can comply with its terms and make the change of beneficiary and preserve the fund for his benefit. The case is different with Freeman or those belonging to his class, who, prior to the time the law was enacted, had appointed the plaintiff as his beneficiary, and who, from the time of such appointment continuously up to his death, had no family, nor any one related to him by blood, nor dependent upon him. It was not possible for him to comply with the terms of the law by naming another beneficiary. To give the law such a construction as would include his class, would operate as a complete deprivation of their rights, and an absolute repudiation by the society of its obligations. Such an injustice will never be tolerated, if by any construction it can be avoided. We are bound to construe a law, if we can, so as to make it operative, without impairing the obligation of existing contracts, or divesting vested rights.

We may, therefore, assume, for the purposes of the case, that the law was retroactive, and intended to require a change of beneficiaries, limiting them to the classes specified, and still we would be bound to construe it so as to

make it operative and valid, which can only be done by confining its operation to those members who could make the change. So averse are courts to giving a law a retroactive operation, that even where the retroactive character of the law is clearly indicated on its face, they always subject it to the most circumscribing construction that can possibly be made consistent with the intention of the legislature. In *Hedges* v. *Rennaker*, 3 Met. (Ky.) 258, the court says: "It has been said by this court that retrospective statutes have ever been regarded as impolitic and unwise, as they are in general unjust and oppressive. And although such statutes have been held valid under the constitution, they have always been subjected to such a construction as would circumscribe their operation within the narrowest possible limits consistent with the manifest intention of the legislature, to be drawn from the language used."

The argument of counsel that Freeman's failure to designate a beneficiary before his death, operated to vest the fund in the society, assumes that he failed to do something, which, under the law, he could have done, or neglected to do, and which would have prevented such result, and preserved the fund for the benefit of his beneficiary. As we have assumed only for their sake that the law is retroactive, this argument only strengthens our construction that it should be construed as only applicable to those who could make the change, and refused or neglected to do it before they should be visited with the consequences of forfeiture.

Nor does the case upon which counsel rely support their contention. I refer to the case of *Supreme Commandery* v. *Ainsworth*, 71 Ala. 436; 46 Am. Rep. 332. There, the legislature provided that a policy should be rendered void in case the holder of the certificate committed suicide. In that case, the certificate was accepted by the assured, subject to the laws of the order now in force, or which hereafter may be enacted by the supreme commandery, and the court by Brickell, J., said: "Parties may contract in reference to laws of future

enactment,— may agree to be bound and affected by them as they would be bound and affected if such laws were existing. They consent that such laws may enter into and form parts of their contracts, modifying or varying them. * * * The statute prescribing the condition of official bonds, and the bonds of executors, administrators, and guardians, extends the liability of the surety to the performance by the principal of such duties as are required of him by existing laws, or by any law passed subsequent to the execution of the bond. There is no injustice in the statute. Nothing retrospective in its operation." But the court, as if having in mind the case at bar, added: "While a subsequent law, because of the assent of the member, may add new terms or conditions to a certificate,— terms or conditions reasonably calculated to promote the general good of the membership and may be valid and binding,— it does not follow that a law operating a destruction of the certificate or a deprivation of all rights under it would be of any force." (*Korn* v. *Mut. Assn. Soc.* 6 Cr. 192.)

In our view of the case, therefore, we do not think that the law in question is retroactive, or that it affects the certificate of Freeman, or the rights of his beneficiary under it; or if it be considered to have a retroactive operation, that it applies to certificates held by those members who cannot comply with its terms, and whom to construe it to include would operate as a complete destruction of their certificate and their rights under it, and as a repudiation by the society of its obligation.

It follows that the judgment must be affirmed.