Argued January 24, reversed November 13, petition for
rehearing denied December 11, 1957

# STATE ᴇx ʀᴇʟ BREWSTER ᴇᴛ ᴀʟ *v.* OSTRANDER

### ᴇᴛ ᴀʟ

318 P. 2d 283

*William B. Murray*, Portland, argued the cause for appellants. With him on the brief was Donald R. Stark, Portland.

*George Rhoten*, Salem, argued the cause for respondents. With him on the brief were Rhoten, Rhoten & Speerstra, DeArmond & Sherman, Salem, and Kenneth E. Brown, District Attorney of Marion County.

Before PERRY, Chief Justice, and LUSK, BRAND, and McALLISTER, Justices.

McALLISTER, J.

This is an action in quo warranto brought in the name of the state of Oregon on the relation of the Disabled American Veterans, Salem, Chapter No. 6, a corporation, A. L. Brewster and eight other persons against Verne L. Ostrander and William Croghan, as defendants.

The action was brought pursuant to the provisions of ORS 30.510① to 30.640 to establish that (a) the nine individual relators are the lawful directors and officers

---

① ORS 30.510. An action at law may be maintained in the name of the state, upon the information of the district attorney, or upon the relation of a private party against the person offending, in the following cases:

(1) When any person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this state, or any office in a corporation either public or private, created or formed by or under the authority of this state; or,

* * * * *.

of Veteran's Living Memorial Building Association of Marion County, Oregon, Incorporated; (b) that the defendants are no longer officers or directors of said corporation; (c) that the defendants have usurped, intruded into and unlawfully hold and exercise offices in said corporation; and (d) that the relators are entitled to the books, papers and property of said corporation. From a judgment in favor of plaintiffs, the defendants appeal.

The facts which resulted in this controversy will be briefly summarized. The Disabled American Veterans, Salem, Chapter 6, is an Oregon corporation organized in 1932 and will be herein referred to as "the chapter." Although the details are not disclosed by the record, it appears that early in 1946 the chapter had decided to sponsor the construction in Salem of a veteran's memorial building. To carry out this purpose Veteran's Building Association of Marion County, Oregon, Incorporated was organized as a non-profit corporation by the filing of articles of incorporation on March 12, 1946. There is no evidence on the point but it is probable that the corporators were all members of the chapter. The articles of incorporation as filed contained no provision vesting in the chapter or its members any direct or indirect control over the new corporation. Whether the omission of such a plan was intentional or an oversight is not disclosed by the evidence. In any event, the new corporation was organized as an entirely separate and independent corporation with no legal tie binding it to the chapter.

By supplementary articles of incorporation filed August 8, 1946, the n a m e of this corporation was changed to Veteran's Living Memorial Building Association of Marion County, Oregon, Incorporated

which will be hereinafter referred to as the "building corporation."

From the minute book of the building corporation it appears that the first by-laws were adopted by the directors on August 31, 1947. In these by-laws adopted nearly a year and a half after the corporation was organized, there appears the first attempt to give the chapter some control over the building corporation. The by-laws contained the following provisions:

### "ARTICLE THREE

"The directors of this corporation shall be nine in number. The first nine and their terms of years shall be Verne Ostrander, Douglas McKay, and A. L. Brewster, each for three years; Luther Cook, William Croghan and Owen A. Cannon, each for two years; and Herbert Stiff, Jr., James Calloway and Ingvard Hansen, each for one year. The officers of this corporation shall consist of a president, vice-president, secretary and treasurer. These directors shall meet on or before the first Tuesday in June, 1948, on the call of Verne Ostrander, and shall proceed to elect from among their number a Vice-President, a Secretary and a Treasurer, each of whom shall serve one year or more, beginning with the date of their election and ending July 1st, 1949, or until their successors are elected and qualified. Thereafter these officers shall be elected annually on the first day of each and every July thereafter except when the first falls on a Sunday or other legal holiday, in which event the annual meeting shall be held on the day following, and said officers shall serve until their successors are duly elected and installed with the exception of the President, Verne L. Ostrander, who shall hold his office as President until July, 1950.

"Each of the above nine directors shall serve out his appointed term of years and his position shall be filled by the Board of Directors by electing the

person designated by the vote of the Salem Chapter No. 6, Disabled American Veterans. He shall be elected for a term of three years. The officers of the corporation shall be elected by the Board of Directors.

"In the case of suspension, revocation or non-existence for any reason of the Charter of the Salem Chapter No. 6, Disabled American Veterans, the Board of Directors shall elect anyone at their discretion."

The principal question involved in this case is the validity of the provisions contained in the last two paragraphs of the foregoing by-law.

Apparently no effort was made by the chapter to designate the persons to be elected as directors by the building corporation until August, 1952. In the meantime, the building corporation had acquired a site, started a building, discontinued building for lack of funds and was attempting to sell the land and partially completed building. It is apparent from the record that considerable discord developed during this period between the officers and members of the chapter and the officers and directors of the building corporation.

It appears from the minutes of meetings of the directors of the building corporation held on July 14, 1952 that there were then seven persons, including the defendants, serving as directors of that corporation. The two defendants were the only corporators remaining on the board. The other five directors had been elected by the board of directors at various times since 1946 to fill vacancies on the board. Verne L. Ostrander was still acting as president and William Croghan as secretary.

At a meeting of the directors of the building corporation held on July 27, 1952, the board adopted a new set of by-laws eliminating therefrom the provisions

of the original by-laws purporting to give the chapter the right to designate the persons to be elected directors of the building corporation. Relators contend that the directors of the building corporation had no right to adopt the new by-laws because their terms had expired and for other reasons.

At a meeting of the chapter held on August 7, 1952, it designated nine of its members to be elected as directors of the building corporation. On August 11, 1952, the nine persons so designated mailed a written notice to each of the seven persons who were then serving as directors of the building corporation, including the two defendants, stating that an organizational meeting would be held on August 21, 1952 at an hour and a place designated. Pursuant to said notice, the nine designees held a meeting at the appointed time and place at which they purported to elect themselves as directors of the building corporation. They then proceeded to elect from their number a president, vice-president, secretary and treasurer. The nine persons designated by the chapter to serve as directors of the building corporation are the individual relators in this proceeding.

■ As stated in *State ex rel. Brown v. Bailey,* 151 Or 496, 51 P2d 671, and the earlier cases cited therein, it is the general rule that the burden of proof in quo warranto actions is on the defendant. There is a well recognized exception to such general rule. When induction as well as ouster is sought in a quo warranto proceeding, the burden is on the relators to allege and prove a title in themselves before they can inquire by what authority the defendants exercise their office. This rule was applied in *State ex rel. v. Cook,* 39 Or 377, 382, 65 P 89, a quo warranto proceeding to determine

the right to the office of a road supervisor in Morrow county, where the court said:

> "As a general rule, it is unnecessary to show title in the relator where the action is instituted for the mere purpose of ouster; but, where induction as well as ouster is sought, as in the case at bar, his title and qualifications must be set forth with reasonable certainty: 2 Spelling, Extr. Relief, § 1848. In the latter instance the complaint should show the interest and eligibility of the relator, and pertinent facts establishing his election or appointment to the office: 2 Spelling, Extr. Relief, § 1848; *Reynolds v. State ex rel.,* 61 Ind. 392; *State ex rel. v. Long,* 91 Ind. 351; *State ex rel. v. Bieler,* 87 Ind. 320; *State v. Stein,* 13 Neb. 529 (14 N. W. 481); *State ex rel. v. Hamilton,* 29 Neb. 198 (45 N.W. 279), and *People ex rel. v. Ryder,* 12 N. Y. 433. * * *"

The above exception to the general rule has been followed in numerous cases from other jurisdictions involving public office. For example see *Stephens v. Wohlwender,* 197 Ga 795, 30 SE2d 469, *State v. Boyle,* 206 Ind 574, 190 NE 743, *Ebright v. Buck,* 326 Mich 208, 40 NW2d 122, *State v. Turnbull,* 212 Minn 382, 3 NW2d 674, *State v. Tucei,* 175 Miss 218, 166 So 370, and *State v. Christensen,* 84 Utah 185, 35 P2d 775.

The rule placing the burden of proof on the relator is particularly applicable in cases affecting merely private rights in which the public has only a nominal interest. In the following cases involving the right to office in private corporations where both induction and ouster were sought, the burden of proof was held to be on relators: *Miller & al. v. English & al.,* 21 NJL 317, 1 Zab 317 (1848), *The People v. Lacoste,* 37 NY 192 (1867), *State ex rel. Bornefeld v. Kupferle,* 44 Mo 154 (1869), *Commonwealth of Pennsylvania ex rel. Pierce v. Filer et al.,* 13 Pitt LJ 286 (1883), *State ex rel. Brun*

*v. Oftedal,* 72 Minn 498, 75 NW 692 (1898), *Clark v. Wild et al.,* 85 Vt 212, 81 A 536 (1911), and *Commonwealth v. Morris,* 269 Pa 476, 112 A 770 (1921). See also High's Extraordinary Legal Remedies (3rd ed) 613, § 652.

It is evident that the alleged rights of the relators depend entirely on the validity of the by-law purporting to give the chapter corporation the right to designate the persons to be elected directors of the building corporation. If such by-law is invalid the relators can not prevail in this proceeding.

The building corporation was organized under the provisions of Oregon Laws 1941, ch 462, p 828 authorizing the creation of non-profit corporations, which act is now codified as ORS 61.010 to 61.160. The purpose for which the corporation was organized was stated in the articles of incorporation as follows:

### "ARTICLE II

"The object, business and pursuit of this corporation shall be fraternal, patriotic, historical and educational, to preserve and strengthen comradeship among the members of its own and sister bodies; to assist worthy comrades, to perpetuate the memory and history of our honored dead; to assist their widows and orphans; to maintain true allegiance to the government of the United States of America and fidelity to its Constitution and laws; to foster true patriotism; to maintain and extend the institutions of American freedom; and to preserve and defend the United States from all her enemies whomsoever.

"In order to carry out these principals and all the incidents and accessories necessary to successfully conduct any of the above enumerated occupations and missions; to provide, maintain and operate a building or buildings to be used for the fra-

ternal or social purposes for the benefit of this corporation;

"* * * * *."

The articles further provide that the corporators were to be the governing body to exercise the powers of the corporation and that their successors should "be elected annually by the members of the organization on the 1st day of each and every July." Although the articles clearly imply that the corporation will have members, the articles do not provide who the members shall be nor how they shall be elected or otherwise designated.

The 1947 by-laws also provide that the corporation will have members although the provision specifying who the members shall be is certainly not a model of clarity. This provision is the first sentence of Article Four of said by-laws and reads as follows:

"The Board of Directors so elected or appointed, when qualified as by law required, shall constitute the members as so elected or appointed and shall constitute the legal and lawful body to manage and conduct the business affairs of this corporation."

The by-laws provide for meetings of the members in the following language:

"* * * The annual meeting of the members of the corporation shall be on the first day of each and every July of each calendar year except when the first falls on a Sunday or other legal holiday, in which event the annual meeting shall be held on the day following. Notice of the time and place of such annual meeting shall be given to all members of the corporation and to all newly elected or appointed members of the corporation. * * *"

The by-laws seem to intend that the directors shall be the members of the corporation and that a person

may attain membership only by election to the board of directors.

The act authorizing the creation of non-profit corporations clearly intends that such corporations shall have members. ORS 61.010 provides that the activities of such corporations shall not "result in a remunerative profit to them or any of their members." ORS 61.070 provides in part that non-profit corporations may "classify their members according to their respective periodic contributions of fees or dues, or otherwise, and to prescribe the voting rights and eligibility to hold office of the several classes of members." ORS 61.075 provides that the meetings of the members of non-profit corporations may be held without the state. Although ORS 61.070 provides that the power vested in the corporation shall be exercised by the corporators and their successors in office, other portions of the act provide that certain corporate action may only be taken by a vote of the members. ORS 61.080 provides that supplementary articles of incorporation may be filed "at any time when two-thirds of the members present at any regular or special meeting called for the purpose so determine." The same section further provides that non-profit corporations may be dissolved "by a vote of three-fourths of the members present at any such general or special meeting called for the purpose." It is the obvious intent of the foregoing statutes that the members of a non-profit corporation shall have the same general relationship to the corporation and its directors as the stockholders have in a corporation organized for profit.

The provisions of the by-laws requiring the board of directors to elect as directors those persons designated by the chapter obviously intended that such election should occur annually in lieu of an election of

directors by the members of the building corporation. As heretofore pointed out, the articles of incorporation of the building corporation provide that the successors to the corporators "will be elected annually by the members of the organization on the 1st day of each and every July." The provisions of the by-laws on which relators rely are in direct conflict with this provision of the articles of incorporation.

■■ It is uniformly held that the by-laws of a corporation may not conflict with the articles of incorporation. In *Griffith v. Klamath Water Assn.*, 68 Or 402, 405, 137 P 226, this court said:

> "A by-law of a private corporation is a permanent rule of action adopted by the stockholders, in accordance with which the corporate affairs are to be conducted. By-laws should not conflict with the statute or charter. They must not interfere with the vested and substantial rights of the stockholders and must operate equally upon all persons of the class which they are intended to govern: 1 Cook, Corp. (6 ed.), § 4a; 10 Cyc. 355, 356. * * *"

In *McConnell v. Owyhee Ditch Co.*, 132 Or 128, 132, 283 P 755, the court expressed the same rule in the following language:

> "The right of a mutual corporation or society to amend or to repeal its by-laws, or to enact others not inconsistent with the purpose of the organization, is recognized: *Wist v. Grand Lodge*, 22 Or. 271 (29 P. 610, 29 Am. St. Rep. 603, 40 Am. & Eng. Corp. Cas. 416). A by-law may and does operate as a contract among the members of the corporation. If a by-law is *consistent with the articles of incorporation* and is not in *contravention of law* or public policy, and if legally adopted, is binding both upon the member and the corporation: 14 C.J. 885. Of course if the adoption of or change in a by-law violates the obligations of a contract between a

corporation and its members it would be repugnant to law and illegal and void." (Italics ours)

From Fletcher Cyclopedia Corporations (perm ed) 723, § 4190, we take the following:

"By-laws, to be valid, must be consistent with the terms and spirit of the charter of the corporation—the word 'charter' being here used in its broadest sense without regard to whether the statutory right to be a corporation is obtained by special act or under general statutes. A by-law which is not thus consistent with the charter but is in conflict with and repugnant to it is void."

It was held in *Kaski et al. v. Kemppainen et al.*, 110 Or 362, 222 P 1104, in construing sections almost identical with ORS 61.060 and 61.070 that the by-laws of a non-profit corporation must be adopted by the corporators or their successors in office and not by the members of the corporation. But this does not authorize the board of directors to adopt a by-law which would deprive the members of rights vested in them by law or by the articles of incorporation. Since the right to elect directors of the building corporation is vested in its members by the articles of incorporation, the board of directors had no authority to give away this right to the members of some other corporation. Because the by-law under which relators claim is inconsistent with the articles of incorporation, we hold that such by-law is void.

In view of our holding, it is unnecessary to decide whether in any event the relators could have elected themselves directors of the building corporation. The by-law in question seems to clearly provide that the persons designated by the chapter must be elected to office by the directors of the building corporation. This the directors of the building corporation refused to do.

■ We also deem it unnecessary to decide at this time whether the directors of the building corporation had authority on July 27, 1952, to adopt new by-laws. If they did, the by-law under which relators claim was repealed before relators were designated by the chapter and purported to elect themselves directors. Ordinarily the directors of a corporation continue in office until their successors are elected and qualified. From 2 Fletcher Cyclopedia Corporations (perm ed) 206, § 375, we quote the following:

> "The tenure of office generally is until the election of successors, and the officer holds over after the end of his term until a successor is elected. No good reason is apparent why such officer, when holding over, is not a de jure officer, and the authorities so hold. However that may be, there is no question but what directors or other officers holding over after the expiration of their term, and until the election or appointment of their successors, are at least de facto officers, if not officers de jure. They must perform the duties enjoined by law with the same fidelity as regularly elected officers, and they are likewise subject to the same statutory liability for any failure of duty occurring during the term for which they may be holding over."

■ The power to make by-laws is vested by law in the board of directors and this includes the right to amend. Fletcher Cyclopedia Corporations (perm ed) 682, § 4178 states the rule as follows: "It is the general rule that, in the absence of specific provision to the contrary, the body which has the power to adopt a by-law also has the power to amend one adopted.  *   *   *"

■ Relators argue that the adoption of the 1947 by-laws vested some undefined contractual rights in the chapter. As stated in *McConnell v. Owyhee Ditch Co.*, supra, a by-law does operate as a contract between the corporation and its members. However, neither the

chapter nor the relators claim to be members of the building corporation and there is no evidence of any contract entered into at any time between the chapter and the building corporation requiring the latter to surrender any of its corporate powers to the chapter.

We regret the discord between former comrades-in-arms which has resulted in this controversy, but must nevertheless decide the case on the well established principles of law herein set forth.

Reversed.

ROSSMAN, J. did not participate in the consideration or decision of this case.