Argued and submitted June 5,
reversed and remanded September 10,
reconsideration denied December 4,
petition for review allowed December 23, 1980

JONES et al,
*Appellants,*
*v.*
WALLACE et al,
*Respondents.*

(No. A7908-03891, CA 15953)

616 P2d 575

Charles R. Markley, Portland, argued the cause for appellants. With him on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

James N. Westwood, Portland, argued the cause for respondents. With him on the brief were Bruce A. Rubin and Miller, Anderson, Nash, Yerke & Wiener, Portland.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

This is a dispute between the two minority stockholders, plaintiffs, and the majority stockholder, defendant Wallace of Capital Credit & Collection Service, Inc. Plaintiffs seek a declaratory judgment that they continue to be directors of the corporation on the ground that there was not a valid quorum at the stockholders' meeting that purported to remove them.[1] The trial court granted summary judgment for defendants. We reverse.

The issue is whether an invalid bylaw can, as plaintiffs urge, be enforced as a contract.

The two plaintiffs each own 49 1/2 shares of the outstanding stock of the corporation. The only other stockholder is defendant Wallace who owns 100 shares, *i.e.,* 50.25 percent of the stock. Defendant Wallace had been the sole stockholder before he sold plaintiffs their shares.

In 1972, when Wallace was the sole stockholder, the directors of the corporation, including defendant Wallace, adopted bylaws. One bylaw defined a quorum for purposes of stockholders' meetings:

> "At any meeting of stockholders *all* of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of stockholders." Article II, § 7. (Emphasis supplied.)

On January 19, 1976, plaintiffs purchased their shares and were elected to the board of directors, presumably at a stockholders' meeting conducted pursuant to the above bylaw. Defendant Wallace was the other director.

Plaintiffs allege and defendants admit:

---

[1] In addition to a declaration that they continue to be directors, plaintiffs seek a declaration that they continue to be officers of the corporation. This latter point does not involve any additional or different issues; if plaintiffs remain directors, it follows that they also remain officers.

"On July 2, 1979, defendant Wallace purported to hold a meeting of stockholders. At such meeting, however, plaintiff Gaarde was not present or represented by proxy. Nonetheless, at such meeting defendant Wallace purported to remove plaintiffs as directors of the corporation and elect defendants Roberts and Smith to the Board of Directors of the corporation."

The question thus becomes whether action taken at the July 2 stockholders' meeting at which all shares were not represented in person or by proxy was valid.

■      Defendants argue and plaintiffs seem to concede that the above-quoted bylaw is invalid. ORS 57.141 provides that the bylaws of a corporation "* * * may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law * * *." ORS 57.165(1) provides in part:

"Unless otherwise provided *in the articles of incorporation,* a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders * * *." (Emphasis supplied.)

It follows that the attempt to specify a quorum other than a majority in other than the articles of incorporation is inconsistent with law.

■      Plaintiffs argue that the stockholders' quorum bylaw, even if invalid, can nevertheless be enforced as a contract. There is considerable authority to support plaintiffs' theory. Annotation, 159 ALR 290 (1945). Oregon appellate courts have not previously had occasion to consider this theory, although in other contexts the Supreme Court has recognized the conceptual basis of it. "* * * A by-law may and does operate as a contract among the members of the corporation. * * *" *State ex rel Brewster v. Ostrander et al,* 212 Or 177, 187, 318 P2d 284 (1957), quoting from *McConnell v. Owyhee Ditch Co.,* 132 Or 128, 132, 283 P 755 (1930). Based upon that language, plus what seems to

be the unanimous holdings of other courts that have considered the issue, we hold that an invalid bylaw can be enforced as a contract.

■ There are two principal limitations on the enforcement of an invalid bylaw as a contract. First, such indirect enforcement is only possible against a stockholder who has assented to the bylaw. Plaintiffs filed an affidavit in opposition to summary judgment that included the minutes of the July 25, 1972 meeting of the corporation's Board of Directors. Plaintiffs' affidavit states, and the minutes reflect, that defendant Wallace voted in favor of the bylaw defining a quorum for meetings of the stockholders. Defendants do not contend otherwise but, instead, appear to concede that defendant Wallace voted for the bylaw here in question. For summary judgment purposes, plaintiffs have shown that defendant Wallace assented to the bylaw.[2]

■ The second limitation on the enforcement of an invalid bylaw as a contract is that the substance of the bylaw must not be inconsistent with public policy. Defendants contend that the stockholders-quorum bylaw should not be enforced as a contract because it violates public policy. Defendant Wallace is in a rather awkward position in making that argument. He voted for the bylaw he now says violates public policy. Presumably aware of the existing bylaw that required a quorum of all stockholders for all meetings, defendant Wallace sold almost half his stock to plaintiffs. Both

---

[2] There is no basis in the record for concluding whether defendants Roberts and Smith assented to the stockholders-quorum bylaw. It seems unlikely that they did. However, it is not clear in the context of this case whether their assent matters because their position would seem to stand or fall based upon whether plaintiffs can assert a valid contract claim against defendant Wallace.

The pleadings are incomplete. The defendants pleaded the application of the statute, ORS 57.165(1), in an affirmative defense and moved for summary judgment without waiting for a reply to be filed. No reply was in fact filed. Nevertheless, the contract issue was raised and was ruled upon at the trial court level without any procedural objection and is the proposition upon which the parties have joined issue here.

before and after the sale of stock to plaintiffs, defendant Wallace participated in operating the corporation pursuant to that bylaw. In short, defendant Wallace was apparently willing to operate under a scheme that he now claims violates public policy so long as it produced results he was content with; only after his business relationship with plaintiffs for some reason broke down has defendant Wallace sought to vindicate his newly discovered perception of public policy.

In any event, we see no public policy problem on the facts of this case. Defendants argue that enforcing the invalid bylaw as a contract would mean the minority stockholders "could absent themselves from any future stockholders' meetings * * * and strangle the corporation." We think that misses the point. All parties assume or concede that under ORS 57.165(1) exactly that situation could be produced if the *articles of incorporation* provided that all stockholders constitute a quorum. So the public policy issue comes down to not whether minority veto rights violate public policy, but rather whether there is any public policy difference in whether minority veto rights are stated in the articles of incorporation (permitted by ORS 57.165(1)) or in the bylaws.

The only difference that we are aware of is disclosure to the public. Articles of incorporation are filed with the Corporation Commissioner and available for inspection by the public. ORS 57.316. A corporation's bylaws are not necessarily available for public inspection. That difference could be significant if the rights of some third party were involved, such as a creditor of the corporation or a potential investor. But there is no claim or showing on the present record that the rights of any third parties are involved in or would be affected by this dispute—a purely internal dispute between the minority stockholders and the majority

stockholder. On these facts we perceive no public policy difference of substance between whether the possibility of a minority veto is created by the articles of incorporation or is created by enforcing an invalid bylaw as a contract.

Reversed and remanded.