Argued and submitted February 3, reversed May 19, 1981

JONES et al,
*Respondents,*

*v.*

WALLACE et al,
*Petitioners.*

(TC A7809-03891, CA 15953, SC 27349)

628 P2d 388

James N. Westwood, Portland, argued the cause for petitioners. With him on the brief were Miller, Anderson, Nash, Yerke & Wiener and Bruce A. Rubin.

Charles R. Markley, of Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, argued the cause and filed briefs for respondents.

Before Denecke, Chief Justice, and Lent, Linde, Peterson, Tanzer, and Campbell, Justices.

LINDE, J.

## LINDE, J.

Under the Oregon Business Corporation Act, a shareholders' meeting requires a quorum of a majority of the voting shares unless a different quorum is provided in the articles of incorporation. ORS 57.165.[1] The issue before us here is whether a 100 percent quorum requirement that is adopted as a corporate bylaw but not in the articles, as the statute provides, nevertheless may be enforced as a binding agreement among the shareholders of a closely held corporation by setting aside corporate action taken without such a quorum.

In 1972, when defendant Wallace was the sole shareholder of Capital Credit & Collection Service, Inc. as well as one of its directors, the directors adopted bylaws which included the following:

> "At any meeting of stockholders all of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of stockholders."

In 1976 plaintiffs Jones and Gaarde each purchased 49-1/2 shares of the corporation's stock. Wallace retained 100 shares, or 50.25 percent. The three shareholders also constituted the board of directors. According to plaintiffs' complaint, although not conceded by defendants, there was a directors' meeting in June 1979, at which a majority of the directors removed Wallace as president and elected Jones president and Gaarde secretary of the corporation. Both sides agree that the following month a shareholders' meeting occurred at which Gaarde was not present in

---

[1] ORS 57.165:

"(1) Unless otherwise provided in the articles of incorporation, a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders, but in no event shall a quorum consist of less than one-third of the shares entitled to vote at the meeting. If a quorum is present, the affirmative vote of the majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the shareholders, unless the vote of a greater number or voting by classes is required by this chapter, the articles or incorporation or bylaws.

"(2) The shareholders present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum.

person nor represented by proxy, and at which Wallace used his majority of the voting shares to remove both the minority shareholders as directors of the corporation and to replace them with defendants Roberts and Smith.

The minority shareholders thereupon sued for a declaratory judgment that they rather than Roberts and Smith remain directors and officers of the corporation. The circuit court allowed summary judgment for defendants on the grounds that the shareholders' meeting satisfied the statutory quorum requirement, and that this requirement could not be overridden by the bylaw. The Court of Appeals reversed, accepting plaintiffs' argument that the bylaw could be enforced as a contract among assenting shareholders. 48 Or App 213, 616 P2d 575 (1980). As this question has not previously been decided under the Oregon Business Corporation Act, we allowed review. We reverse the Court of Appeals and affirm the judgment of the circuit court.

The choice whether an extraordinary quorum requirement can be imposed by bylaws or only in the articles of incorporation is not an unimportant technicality. The articles are on file with the Corporation Commissioner, ORS 57.306, 57.316, and thus are publicly available to the original and subsequent investors as well as others doing business with the corporation; and the pertinent classes of shareholders are entitled to vote on any amendments. ORS 57.360, 57.365. Bylaws, on the other hand, are adopted and changed by the board of directors without prior notice to or participation by the shareholders, unless such shareholder rights are expressly reserved. Accordingly, the statute limits bylaws to "provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation." ORS 57.141.[2]

The quorum provision of ORS 57.165 has antecedents as far back as the Uniform Business Corporation Act

---

[2] ORS 57.141:

"The initial bylaws of a corporation shall be adopted by its board of directors. The power to alter, amend or repeal the bylaws or adopt new bylaws subject to repeal or change by action of the shareholders shall be vested in the board of directors unless reserved to the shareholders by the articles of incorporation or by bylaws existing on December 31, 1953. The bylaws may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation."

of 1927. The commissioners' notes to the uniform act explained that it was included to settle divergent case law on shareholders' quorums.[3] Substantially the same provision was included in the American Bar Association's Model Business Corporation Act, from which it entered the Oregon act in 1953. Only a 1975 amendment of ORS 57.165 presents a fortunately untypical problem in statutory history.

Section 30 of the Model Act from which the Oregon act was drawn provided both a quorum rule for shareholders' meetings and a rule for action by affirmative vote of a majority of the voting shares represented at the meeting once a quorum was present. In the Model Act, the quorum rule could be altered only in the articles of incorporation, but the number or classes of shares required for an affirmative decision could be increased either in the articles or in the bylaws.[4] The option of changing voting requirements by means of bylaws was deleted when Oregon adopted the act.[5]

These divergent provisions represented deliberate choices. The preface to the Model Act explained that both the extent of protection for shareholders' voting rights and the provision of flexibility in the regulation of a corporation's internal affairs were major and disputed objectives of the act. *See* ALI, Model Business Corporation Act vi-viii (1953). The chosen statutory provisions were meant to be enforced. The 1971 commentary to this section of the Model Act stated: "In the event of a conflict between the statute and provisions of the articles or the by-laws as to a quorum,

---

[3] Uniform Business Corporation Act (1927) p. 56.

[4]    "Unless otherwise provided in the articles of incorporation, a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders, but in no event shall a quorum consist of less than one-third of the shares entitled to vote at the meeting. If a quorum is present, the affirmative vote of the majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the shareholders, unless the vote of a greater number or voting by classes is required by this Act or the articles of incorporation or by-laws."

ALI Model Business Corporation Act § 30 (1953).

[5] Or Laws 1953, ch 549, § 30.

the provisions of the statute will of course prevail."[6] When a statute in the same section provides that one provision is subject to change in corporate articles and another is subject to change in the articles or the bylaws, it leaves little doubt that the first cannot be changed by a bylaw.

The 1953 Oregon act was revised in 1975 as a result of efforts of the Corporation Division of the State Department of Commerce and the Oregon State Bar. The stated purpose was to conform the Oregon act more closely to the Model Act. The revisers were aware of the difference between corporate articles and bylaws with respect to quorum and voting requirements. They proposed to undo the 1953 deletion of "bylaws" from the final sentence of the Model Act provision, and this change appears in the present ORS 57.165(1). Unfortunately, however, the Corporation Division's explanatory memorandum accompanying the 1975 bill misstated the effect of this change. It stated:

> "*Section 13* - Subsection (1) of ORS 57.165 is identical in substance with the Model Business Corporation Act. The only change is that Oregon has deleted the phrase 'or bylaws' at the end of Subsection (1). The amendment would allow the bylaws, which generally govern the internal affairs of a corporation, to determine quorum requirements."[7]

Actually, of course, the sentence to which the reference to bylaws was restored does not deal with quorum requirements but with the votes required to take action once a quorum is present.

■ The quoted statement from the explanatory memorandum, even if it represented the intentions of the drafters rather than a simple mistake, is not sufficient to attribute this intention to the 1975 Legislative Assembly in enacting the corporation act revisions. Legislative words, like Humpty-Dumpty's, mean what the legislature says they mean, or are intended to mean, if that intended meaning was known or readily could have been made

---

[6] Source, p. 641. There would be no conflict where a state's statute allows the articles or the bylaws to define a different quorum, as the commentary noted. *Ibid.*

[7] Department of Commerce, Corporation Division, Exhibit A, Memorandum Explaining Senate Bill 501, March 14, 1975.

known to any member before the vote. *Chapman Bros. v. Miles-Hiatt Investments,* 282 Or 643, 646-651, 580 P2d 540 (1978).

> "A legislative body adopting the bill is assumed to endorse the accompanying explanations and interpretations of the committee that reports the bill to the floor, unless these are modified in floor debate. The strength of the assumption depends on the extent to which the committee's understanding of the bill is made available to the other members before the vote or could be brought to their attention by interested legislators or citizens. . . ."

282 Or 651, n. 4.

■ We often recognize as relevant legislative history the reports of the Criminal Law Revision Commission and its sources,[8] the reports of the Commissioners on Uniform State Laws,[9] and other preparatory materials, as well as individual testimony, if these have demonstrably had the attention of members of legislative committees who had responsibility for approving the bill. In this instance, there is no such indication with respect to the misstatement in the quoted memorandum concerning the proposed amendment of ORS 57.165(1). The amendment was not enacted on its own but as one section of a larger revision. There is no reference to this amendment in the committee minutes. Any lawyer or lay legislator who examined the bill might simply have recognized that the Corporation Division's explanation of this detail was in error and said no more about it. This is not the kind of legislative history that might cause doubt whether a bill misplaced a phrase or chose faulty terms to carry out its apparent purpose. It creates no doubt that ORS 57.165 still permits the majority quorum to be "otherwise provided in the articles of incorporation" but not in the bylaws.

■ In view of the statute, plaintiffs do not press a claim that the bylaw on which they rely effectively requires a 100 percent quorum for a shareholders' meeting. Instead they contend, and the Court of Appeals held, that a

---

[8] Oregon Criminal Procedure Code, Final Draft and Report, November 1972; Oregon Criminal Code, Final Draft and Report, July 1970. *State v. Franklin,* 283 Or 439, 583 P2d 557 (1978); *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977).

[9] *See, e.g., Brewer v. Erwin,* 287 Or 435, 600 P2d 398 (1979).

bylaw, even if invalid, can be enforced as a contract against a shareholder who has assented to the bylaw, and that this bylaw should be so enforced. 48 Or App at 216-217.

We need not here question the general proposition that a contractual agreement may be given the form of a bylaw or, conversely, that a bylaw sometimes may incorporate a binding commitment to a corporation's shareholders or members, and that such contractual obligations may bind the parties thereto apart from the bylaw as such. The broad generalization that an invalid bylaw may be enforceable as a contract has been stated in a number of cases, although the two Oregon cases cited for this proposition involved membership associations incorporated under other statutes than the business corporation act. *State ex rel Brewster v. Ostrander et al*, 212 Or 177, 187, 318 P2d 283 (1957), quoting from *McConnell v. Owyhee Ditch Co.*, 132 Or 128, 132, 283 P 755 (1930). The decisions from other states cited on either side also are distinguishable for a variety of reasons. Some involve bylaws which were ineffective as such only because they were faultily adopted; some concern the enforcement of corporate rights against a shareholder; the older cases antedate the modern corporation statutes; or the argument made here was not presented.[10]

Moreover, the question before us is not whether an agreement among corporate shareholders not to act at a shareholders' meeting unless all are represented, if such an agreement were actually made, could give rise to a contract cause of action by one shareholder against another or whether such an agreement would be void as contrary to ORS 57.165. The question here is whether a bylaw in existence when a shareholder buys his shares can be construed into a contract in order to enforce it by setting aside corporate action taken in accordance with the statute and the corporate articles. This contract theory, whatever its merits in other contexts, cannot be used in this fashion to

---

[10]*See, e.g., Krauss v. Kuechler*, 300 Mass 346, 15 NE2d 207 (1938); *Federal Services Finance Corp. v. Bishop National Bank*, 190 F2d 442 (9th Cir 1951); *Blue Mountain Forest Association v. Borrowe*, 71 NH 69, 51 A 670 (1901); *Weiland v. Hogan*, 177 Mich 626, 143 NW 599 (1913); *In re William Faehndrich*, 2 NY2d 468, 141 NE2d 597 (1957).

circumvent the statutory procedures for corporate decisions and accomplish by indirection what the bylaw could not accomplish directly.

Finally, it appears that the sponsors of the 1975 revision of the Oregon Business Corporation Act were conscious of the special problems of shareholder rights in a closely held corporation, particularly with respect to participation in the control of the corporation, and that they included a new provision authorizing shareholder voting agreements as a means for dealing with these problems. ORS 57.175(2).[11] The revisers' notes to this section stated that the enforceability of voting agreements "would have particular utility in cases of close corporations."[12] No voting agreement is alleged in this case. When the statute provides this means, as well as amendment of the corporate articles, for shareholders to protect their voting position in corporate decisions, there appears to be the less reason to invent another theory which would circumvent the express provision of ORS 57.165.

Plaintiffs also argued in support of a motion for reconsideration in the circuit court and a motion to set aside judgment and amend their complaint, and in their appeal, that summary judgment was improper because defendant Wallace waived the invalidity of the bylaw that purported to require a 100 percent shareholders' quorum or that he was estopped to deny its validity. The argument rests on the fact that Wallace voted for the bylaw and failed to have it changed while he was the sole shareholder and controlled the board of directors. The motion was supported by an affidavit of plaintiff Jones asserting that the three shareholders agreed to hold shareholders' meetings only when all were present and followed this practice from January 1976 through January 1979.

---

[11] ORS 57.175(2):

"Agreements among shareholders regarding the voting of their shares shall be valid and enforceable in accordance with their terms. Such agreements shall not be subject to the provisions of this section regarding voting trusts."

[12] For a discussion of the utility of voting agreements in allocating control in close corporations, *see* Gelb, *Close Corporation Control and the Voting Agreement,* 16 Land & Water L Rev 225 (1981). *See also* O'Neal, *Close Corporation Control Devices,* 61 Ill B J 118 (1972).

Assuming these facts, the circuit court did not err in rejecting the argument. If plaintiffs could not set aside corporate action taken with less than a 100 percent quorum of shareholders on a theory that Wallace was bound to honor that quorum as a matter of actual contract, they can be in no better position to set aside corporate action on the theory that Wallace was bound by a waiver or estoppel. As already stated, the question here is not whether plaintiffs have some other remedy against Wallace. It is whether they are entitled to a declaration that they remain directors of Capital Credit & Collection Service, Inc. (and consequently its president and secretary respectively) despite the fact that at a shareholders' meeting at which a majority of the eligible shares was represented the vote was to replace them with two other directors. The legal effect of that vote cannot be undone by claiming waiver or estoppel against the majority shareholder any more than by asserting that he breached an actual or implied contract.

Reversed.