## LESSEPS et ux *v.* THE ARCHITECTS' COMPANY OF NEW ORLEANS.

Though it be conceded that an incorporated company, not empowered by its charter to declare the forfeiture of the shares of stockholders who may be in default by the nonpayment of enstallments due for the price of stock, cannot enact, through its board of directors, a bylaw subjecting them to such a forfeiture, yet where, after the organization of such a company, a by-law is adopted at a meeting of the stock-holders, declaring that the failure to pay any installment due for stock shall operate a forfeiture, in favor of the company, of the shares on which such installments may be due and of all previous payments thereon, and the evidence shows that the by-law received the general acquiescence of the stock-holders, a stockholder, whose stock had been declared forfeited under the by-law, and who, though not at the meeting at which the by-law was adopted, is shown to have assented to it, and whose certificates of stock, signed by the president and secretary, and offered in evidence by himself, acknowledging the payment of the first instalment, contain, at the bottom of each, a printed copy of the by-law, will not be allowed to recover from the company, on the winding up of its business, the amount paid on his stock. *Per Curiam:* The acceptance of the certificates in the form in which they were delivered, was a tacit acquiescence in, and submission to, the by-law; and it became the law between the party by whom it was accepted and his fellow-stockholders. No rule of law forbids the stock-holders to form such a convention with each other; it is not forbidden by the terms of the charter, and cannot be held to be against public policy; and, although the silence of the charter is a strong argument against the implication of such a power as an incident to the administration of the corporation, it is no reason for frustrating the wishes and agreement of the stock-holders themselves. Regarding the question as one of contract, the stock-holder whose shares have been forfieted, has no equitable claim for relief.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Remy* and *Soulé* for the appellants, relied on the case of the *Long Island Railroad Company*, 19 Wendell, pp. 30, 40. See also 21 Id. pp. 275, 276. *Denis*, for the defendants, cited Angell and Ames on Corporations, p. 267,

301, 466. *Brant* v. *Louisiana State Bank*, 8 Mart. 310. Smith's Mercantile Law,
p. 83. C. C. 424. *Noe* v. *Taylor*, 13 La. 249.

The judgment of the court ( *King*, J. absent, ) was pronounced by

SLIDELL, J. The plaintiffs were subscribers for sixty shares, of one hundred
dollars each, in the stock of the Architects' Company, and had paid four instal-
ments. In 1834, being unable to meet a call of two-tenths, they applied to the
board of directors for indulgence, and were allowed further time. At its expira-
tion, they failed again to pay ; and after a considerable interval, they still remain-
ing in default, their stock was declared to be forfeited at a general meeting of the
stock-holders. The company ceased its operations in 1836, and went into liquida-
tions. After reducing the assets to cash, the stock-holders were enabled to realize
their capital, and a small excess of about six per cent. The stock-holders, although
they have got back their capital and this small excess, are still virtually large losers,
when we take into consideration the loss of interest upon the investment of many
years. The plaintiffs were excluded from a participation in the distribution of the
assets, and brought the present action, in 1847. They alleged no tender of the
unpaid instalments, at any time since the declaration of the forfeiture. The de-
fendants pleaded the forfeiture, insisted upon its legality, and also prayed that, if
the declaration of forfeiture be considered illegal, it might be judicially pronounced,
and judgment rendered for the defendants.

The charter of the company does not contain the grant of power, not uncom-
mon in charters, and which is found in several granted by this Staté, namely, that
of declaring the forfeiture of the shares of a defaulting stock-holder. It may be
conceded that an incorporated company has not the power to create, through its
board of directors, a by-law subjecting stock-holders to such a forfeiture, unless the
power to pass such by-law be expressly granted by the charter. See the *Matter
of the Long Island Rail Road Company*, 19 Wendell, 37. But, in our opinion,
the question presented here is one of contract, and not of corporate power under
the charter. After the organization of this company a meeting of stock-holders
was held, and by-laws were adopted, of which one was in these words: "Tout
actionnaire qui manquera d'effectuer son paiement sur une ou plusieurs actions,
perdra, au profit de la compagnie, tous les paiemens qu'il aura deja fait sur les dites
actions". The plaintiffs do not appear to have been present at the meeting; but
it is obvious from the evidence that, the by-law or rule received the general acqui-
esence of the stock-holders, and, among them, that of the plaintiffs. The very
certificates of stock offered in evidence by the plaintiffs, show the terms upon which
they embarked their money in the common undertaking. The certificates are
in a printed form, filled up with the names of the plaintiffs and the amount of shares,
acknowledging payment of the first instalment, and signed by the president and
secretary. At foot is printed the by-law above stated. The acceptance of the
certificates in this form is a tacit acquiescence in, and submission to, the by-law;
and became the law between the plaintiffs and their fellow stock-holders. When
the plaintiffs adressed a letter to the board, in 1834, asking indulgence, they ex-
pressly acknowledged the rights of the corporation to forfeit the stock, and ap-
pealed only to the liberality of the directors.

We know of no rule of law which forbids stock-holders to form with each other
a convention of this nature. It is not forbidden by the terms of the charter, and
certainly cannot be held to be against public policy. The necessity of prompt
and punctual performance of this duty by stock-holders, in order to accomplish
the corporate objects for which they have associated, had suggested the specific
grant of power to boards of directors which is found in so many charters; and,

SUPREME COURT OF LOUISIANA,

although the silence of the law-giver in a particular charter, is a strong argument against the implication of such a power as an incident to the administration of the corporation, it is no reason for frustrating the wishes and agreement of the stockholders themselves.

Regarding this question then as one of contract, have the plaintiffs presented an equitable claim for relief. They have clearly assented to the agreement, in common with their fellow-stockholders, that they would lose, for the benefit of the rest, all instalments paid, in case of failure to pay any future instalment. This agreement was framed with a prudent view to the success of the common enterprize, that so the corporation might be enabled to accomplish the purposes of its charter, and shelter itself from sacrifices, in case of emergency, by the prompt obedience of its members to a call for funds. The other stockholders did their duty ; the plaintiffs failed to perform theirs, were confessedly in default, and, after a lapse of several years, without a tender of performance at any period of this long interval, ask to be placed upon an equal footing with their associates in the distribution of assets, which, but for the punctuality of those associates, might now have no existence. If there be a power in the court to relieve a party, under such circumstances, from a penalty for his default, stipulated by himself, it is at most a power resting in the sound discretion of the court, and not to be exercised unless the penalty appear excessive, and the court have also the means of decreeing a just compensation for the breach.

We are of opinion that the present case is not one in which we could relieve the plaintiffs, with the certainty that we would not be doing injustice to the punctual stockholders. The penalty, in reference to the nature and object of the contract, does not appear to us excessive or unjust; and the plaintiffs are therefore left to those consequences of their own default, to which they agreed to submit themselves.

It is therefore decreed that, the judgment of the court below be reversed, and that there be judgment in favor of the defendants, with costs in both courts.