Dan H. McKEE, Plaintiff and Respondent,

v.

Robert H. WILLIAMS, Lloyd LaDell Slaugh, Mark H. McKee, Mark Batty and A–1 Tank Rental & Brine Service, Inc., a Utah corporation, Defendants and Appellants.

No. 860122–CA.

Court of Appeals of Utah.

Aug. 28, 1987.

N. George Daines, Daines and Kane, Logan, for defendants and appellants.

---

Clark B. Allred, Gayle F. McKeachnie, Nielsen & Senior, Vernal, for plaintiff and respondent.

## OPINION

Before BILLINGS, ORME and BENCH, JJ.

BENCH, Judge:

Defendants appeal a judgment of the trial court granting partial summary judgment to plaintiff. Defendants also appeal judgments for contempt and damages entered against them. We reverse the partial summary judgment and remand for trial.

## FACTS

In 1975, plaintiff Dan H. McKee, defendants Robert H. Williams, Lloyd LaDell Slaugh, Mark H. McKee, and Ted McBride, all employees of Dalbo, Inc., organized A–1 Tank Rental and Brine Service, Inc. Dalbo, Inc. is an oil field trucking business and A–1 was established to supply brine and lease equipment to oil field operations. Williams, owner of Dalbo, Inc., contributed a brine plant to the new company and in return received 51% of the corporate stock or 2,551 shares. Plaintiff, Slaugh, Mark McKee, and McBride each contributed $11,877.50 and received 12.25% of the stock or 612.25 shares. Although certificates were not actually prepared until April, 1982, the parties considered the stock as issued on the day A–1 commenced business. A–1 started doing business on October 1, 1975. Articles of incorporation were prepared and signed January 1, 1976. Bylaws were prepared but never signed by the parties. Article 12 of the bylaws, at issue in the instant case, provides:

> It is hereby agreed by and between the five principal stockholders that all of the stockholders will remain as employees of Dalbo, Inc. for a period of three (3) years commencing October 1, 1975, in order to retain their stock positions in this corporation. If any of the stockholders leave

the employment of Dalbo, Inc. before the end of the three-year period, then each of the parties shall receive a return of their investment plus interest at the rate of Ten percent (10%) per annum from the time of contribution, which was October 1, 1975.

In March, 1976, Williams sold 612.25 of his shares to defendant Mark Batty. Shortly thereafter, McBride left Dalbo, Inc. and sold his shares to Williams for $23,000.00.

On April 30, 1978, plaintiff left his employment with Dalbo, Inc. and A–1. Discussions with defendants with regard to purchasing his stock ensued but to no result. In 1981, plaintiff contacted Mark McKee, secretary of A–1, and asked to examine the corporate financial records. Mark McKee refused stating plaintiff was no longer considered a shareholder. Plaintiff made a similar request to Williams and received the same response.

Plaintiff's attorney sent a letter to defendants, dated October 30, 1981, requesting permission for plaintiff to review the corporate records, pursuant to Utah Code Ann. § 16–10–47(b) (1986).[1] Defendants refused. Thereupon, plaintiff filed this lawsuit on January 4, 1982. In his complaint, plaintiff, alleging he was a stockholder, asked the court to order defendants to issue him a stock certificate and to provide the corporate records for his examination. Plaintiff also requested damages and leave to amend his complaint to add a shareholder's derivative action should examination of the corporate records reveal other improprieties. In their answer, defendants allege plaintiff failed to comply with article 12 of the bylaws and therefore terminated his position as a shareholder in A–1.

Plaintiff filed interrogatories and a request to produce, seeking access to the corporate records. Defendants failed to answer the interrogatories and produce the records. Plaintiff then filed a motion to

---

1. "Any person who is a shareholder of record, upon written demand stating the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and record of shareholders and to make extracts therefrom. A proper purpose means a purpose reasonably related to the person's interest as a shareholder."

compel discovery, pursuant to Utah R.Civ.P. 37, which was granted by the trial court. In response to the court order, defendants answered the interrogatories and produced some records, but withheld the rest pending the court's determination whether plaintiff was a stockholder. Plaintiff filed a motion for partial summary judgment on July 27, 1982, requesting the court to rule defendants could not unilaterally forfeit plaintiff's stock. In opposition to plaintiff's motion, defendants filed a joint affidavit from defendants Slaugh and McKee which stated that although the by-laws were not signed, all the parties agreed to them. In a minute entry dated October 14, 1982, the trial judge, George E. Ballif, Uintah County Fourth District Court, denied plaintiff's motion, but set forth no reasons for denial. Plaintiff then filed a motion to reconsider his motion for partial summary judgment, asking the court to set forth its basis for denying the motion, and, if there were material issues of fact, to set forth those facts. *See* Utah R.Civ.P. 56(d).

About the time of plaintiff's motion to reconsider, a realignment of Utah's judicial districts moved Uintah County from the Fourth District to the Seventh District and Judge Richard C. Davidson was appointed as district judge. Judge Davidson referred plaintiff's motion back to Judge Ballif and requested a ruling. In a ruling dated January 4, 1983, Judge Ballif, in order to avoid placing any limitations on Judge Davidson, rescinded his ruling denying plaintiff's motion for partial summary judgment, and referred the matter back to Judge Davidson.

Plaintiff resubmitted his motion for partial summary judgment with the same affidavits and memoranda. In a memorandum decision filed May 26, 1983, Judge Davidson granted plaintiff's motion declaring him still a shareholder in the corporation. A petition for interlocutory appeal filed by

defendants was denied by the Utah Supreme Court.

Subsequent to the partial summary judgment decision, defendants again refused plaintiff's request to produce the corporate records and refused to deliver plaintiff's stock certificate. Plaintiff filed another motion to compel discovery and the court issued an order to show cause why defendants should not be held in contempt. After a hearing, defendants agreed to produce the records and the court agreed to hold the stock certificate pending a final judgment. The court then entered a judgment of contempt against defendants.

Plaintiff added to his complaint a derivative action on behalf of A–1 and the matter proceeded to trial on the issue of damages. The court found in favor of plaintiff and awarded him damages, including a $5,000.00 penalty pursuant to Utah Code Ann. § 16–10–47(c) (1987),[2] and attorney fees.

On appeal, defendants challenge the partial summary judgment, the judgment for contempt, the $5,000.00 penalty, and the award of attorney fees.

## RECONSIDERATION OF DENIAL OF MOTION

■ With regard to the partial summary judgment, defendants first argue Judge Ballif erred in rescinding his ruling in response to plaintiff's motion to reconsider. Defendants argue correctly that a motion to reconsider is generally not available under the Utah Rules of Civil Procedure. *Peay v. Peay*, 607 P.2d 841 (Utah 1980). However, a careful reading of Judge Ballif's ruling shows he clearly did not grant plaintiff's motion to reconsider:

> The Rules of Procedure do not recognize a "Motion to Reconsider." However, since the Ruling of the Court has not been implemented by an order, and since the case will be heard by a judge of the

---

**2.** "Any officer or agent who, or a corporation which, shall refuse to allow any such shareholder, or his agent or attorney, so to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, shall be liable to such

shareholder in a penalty of 10% of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him by law; but no such penalty shall exceed $5,000."

Seventh District, this Court deems it appropriate to avoid the limitations such a ruling will place on the court hearing the matter on its merits and therefore elects to rescind the Ruling of the court dated October 14, 1982, and refer the matter back to Judge Davidson of the Seventh District for his consideration of the plaintiff's Motion for Partial Summary judgment.

In response to the change in judicial districts, Judge Ballif merely used the opportunity presented by plaintiff's motion to rescind his ruling and refer the entire matter to Judge Davidson. This decision was clearly within his discretion. A judge is free to change his mind on the outcome of a case until a decision is formally rendered. *Bennion v. Hansen,* 699 P.2d 757 (Utah 1985); *see also,* Utah R.Civ.P. 54(b). We find no error nor abuse of discretion in the ruling.

### VALIDITY OF PARTIAL SUMMARY JUDGMENT

Defendants next argue the partial summary judgment was erroneously granted. Utah Code Ann. § 16–10–25 (1987) states, in part:

> The bylaws may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation.

The articles of incorporation are silent on the question of forfeiture of stock. According to the trial court, it is this silence which makes the bylaw at issue inconsistent with law and the articles of incorporation. In its memorandum decision granting partial summary judgment, the trial court held, "The general rule in matters of this sort is that a by-law cannot work a forfeiture of stock unless authority is given in the corporate charter. No claim has been made of any such authority. Therefore, plaintiff remains a shareholder in the defendant corporation."

The general rule cited by the trial court dates from an 1837 New York case entitled *In the Matter of the Long Island Rail Road Co.,* 19 Wend. 37 (N.Y.Sup.Ct.1837). In *Long Island,* the court acknowledged a corporation possesses "the power to make by-laws *not inconsistent with any existing law,* for the management of its property, the regulation of its affairs, and for the transfer of stock." (Emphasis in original.) Nevertheless, it was held that due to the "extraordinary" nature of forfeiture, a by-law may not subject a shareholder to forfeiture of his or her shares absent an express grant of such power in the charter. 19 Wend. at 41–44. *See also Budd v. Multnomah S.R. Co.,* 15 Or. 413, 15 P. 659, 661 (1887) (forfeiture "is not a common-law remedy, and can only be exercised when it is expressly conferred by some statute").

■ Notwithstanding this general rule, a shareholder might forfeit stock even in the absence of charter authority under basic principles of contract law. In *Lesseps v. Architects' Co. of New Orleans,* 4 La.Ann. 316 (1849), plaintiffs, minority stockholders in defendant company, filed suit after their stock was declared to be forfeited for nonpayment. The forfeiture was in accordance with a bylaw adopted by the general acquiescence of the stockholders and printed on each stock certificate. The court recognized the general rule, but explained "the question presented here is one of contract, and not of corporate power under the charter." *Id.* at 317. Although plaintiffs were not present at the meeting when the bylaw was adopted, their "acceptance of the certificates in this form [was] a tacit acquiescence in, and submission to, the bylaw." *Id.* The court concluded:

> We know of no rule of law which forbids stock-holders to form with each other a convention of this nature. It is not forbidden by the terms of the charter, and certainly cannot be held to be against public policy.... [A]lthough the silence of the lawgiver in a particular charter, is a strong argument against the implication of such a power as an incident to the administration of the corporation, it is no reason for frustrating the wishes and agreement of the stockholders themselves.

*Id.* at 317–18. *See also* W. Fletcher, *Cyclopedia of the Law of Private Corporations,* § 1858 (rev. perm. ed. 1985).

In more recent cases, courts have reiterated the nature and effect of bylaws. In *Dentel v. Fidelity Sav. and Loan Assoc.*, 273 Or. 31, 539 P.2d 649 (1975), the Supreme Court of Oregon held, "The bylaws of the corporation have been termed a contract between the members of the corporation, and between the corporation and its members." *Id.* 539 P.2d at 650–51. The Court of Appeals of Oregon added, "[A]n invalid bylaw can be enforced as a contract. There are two principal limitations on the enforcement of an invalid bylaw as a contract. First, such indirect enforcement is only possible against a stockholder who has assented to the bylaw ... [and second] the substance of the bylaw must not be inconsistent with public policy." *Jones v. Wallace*, 48 Or.App. 213, 616 P.2d 575, 577 (1980).

Under the foregoing analysis, article 12 of the bylaws was perhaps invalid as a matter of general corporate law since it arguably allowed for forfeiture of stock without charter authorization. Nevertheless, summary judgment shall be granted only if the evidence before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Utah R.Civ.P. 56(c). As a matter of contract law, several material issues of fact exist which preclude entry of partial summary judgment. Was there a contract between the parties? Plaintiff argues the bylaws were never signed or adopted nor did he or McBride ever agree to them.[3] Defendants

argue all the parties agreed to the bylaws. What do the ambiguous provisions of the bylaw/contract mean? At trial, defendants argued plaintiff's stock automatically reverted upon termination of his employment with Dalbo, Inc. If so, why did defendants negotiate with plaintiff to purchase his stock and why was McBride paid for his? On appeal, defendants argue article 12 did not provide for a forfeiture, but rather a buy-sell agreement. Another interpretation of article 12 is that it created a condition precedent, i.e, three years of employment, to the vesting of stockholder status. Such ambiguity creates a material issue of fact, *see Seashores Inc. v. Hancey*, 738 P.2d 645 (Utah App.1987), and highlights the difficulty in resolving the case on summary judgment.

We hold the trial court erred in granting plaintiff's motion for partial summary judgment and we reverse. Since the partial summary judgment set into play the entire chain of subsequent proceedings, we also reverse all subsequent orders and judgments and remand the case for trial.

BILLINGS and ORME, JJ., concur.

---

3. Bylaws need not be signed to be adopted. *Marsh v. Mathias*, 19 Utah 350, 56 P. 1074 (1899).