Motion to dismiss appeal denied July 23; argued at Pendleton, October 30, 1929; affirmed January 7; motion to dismiss petition for rehearing allowed February 18, 1930.

## McCONNELL v. OWYHEE DITCH CO.

(283 P. 755)

*Wm. E. Lees* of Ontario for appellant.

*E. M. Blodgett* of Nyssa and *Robt. D. Lytle* of Vale for respondent.

██ BEAN, J. The right of a mutual corporation or society to amend or to repeal its by-laws, or to enact others not inconsistent with the purpose of the organization, is recognized: *Wist v. Grand Lodge,* 22 Or. 271 (29 P. 610, 29 Am. St. Rep. 603, 40 Am. & Eng. Corp. Cas. 416). A by-law may and does operate as a contract among the members of the corporation. If a by-law is consistent with the articles of incorporation and is not in contravention of law or public policy, and if legally adopted, is binding both upon the member and the corporation: 14 C. J. 885. Of course if the adoption of or change in a by-law violates the obligations of a contract between a corporation and its members it would be repugnant to law and illegal and void.

██ The pivotal question in the case seems to be whether the change in the ditch in 1917-1918 was so great that it rendered the enforcement of the resolution of the directors and removal of plaintiff's stopgate in violation of plaintiff's contract right.

To determine this main question we must consider the testimony. As a sample of the evidence, we note the following:

Mr. Guy C. McGee, an engineer, and a witness for plaintiff, testified to the effect, that the main purpose of the work at that time was to increase the capacity of the ditch. The construction of the work contemplated the cleaning of the ditch "to an originally established grade line" without any new cutting. They widened the ditch at places and increased the carrying capacity at least 25 per cent. The land is irrigated by a gravity flow.

Mr. Hubbard Walters, a witness for plaintiff, testified in part as follows in regard to plaintiff's land: "Everything under the ditch was under water." There were no stop-gates in 1902 and 1903. There are 35 acres on one side of the ditch and the balance of the 160 acres on the other and all of the 25 acres in question were irrigated by gravity flow during the entire season of each year. In the late fall the water was very low, when a part of it could not be watered. He was there several years on this place and looked after irrigating and they always watered that land from 1911 to 1917.

On cross-examination the witness stated that after the ditch was cleaned in 1910 and 1911, he could not get water on some of the land that he could before. After the work in 1917 and 1918 the water was not as high in the ditch as it was in 1902 and 1903.

Mr. Charles Bradley, a witness for plaintiff, testified in part as follows:

"Q. Are you well acquainted with Mr. McConnell's land south of the Owyhee ditch that he waters from that stop-gate?
"A. Yes, sir.

"Q. How long have you known that tract of land?

"A. Well, since 19.........

"Q. Do you know whether or not that tract in controversy here could all be watered through the entire irrigating season by gravity flow prior to 1917?

"A. Yes, sir.

"Q. Could it or could it not?

"A. Yes, sir, it could.

"Q. Can it since 1918 without the use of the stop-gate?

"A. Well, I know that he put in a stop-gate since that time."

We think the testimony supports the findings of the trial court. Among other facts found are the following: That prior to the improvement mentioned the ditch had no greater carrying capacity than a ditch 18 feet in width on the bottom. Then finding VIII is as follows:

"That during the year 1917, and after the irrigating season for said year was over, and during the winter of 1918 and before the irrigating season for that year commenced, and against the will and wishes of this plaintiff and without said plaintiff's consent, the said defendant enlarged, widened and deepened said ditch where the same flows through plaintiff's said land, and for some distance above and below plaintiff's said land, to the width of about twenty-four feet on the bottom of said ditch and to a corresponding greater width across the top of said ditch, and deepened said ditch to the extent of from twelve to fifteen inches, and otherwise changed the cross-section and grade of said ditch; that by reason of said ditch being so widened, deepened and changed as aforesaid, the water level in said ditch where it flows through plaintiff's said land, and for some distance above and below plaintiff's said land, and at the point where said plaintiff diverts the water from said ditch through the tap or head gate constructed, maintained and operated by said defendant, was and is lowered to such an extent that the water

level in said ditch became and is thereby made lower than the elevation of at least twenty-five acres of plaintiff's said land at all seasons of the year except in the early spring when there is a flood head of water in the ditch; that plaintiff and his predecessors in interest have during the whole of each and every irrigation season from the year 1896 to the year 1918, the time when said ditch was so widened and enlarged and lowered, regularly, easily, efficiently and properly irrigated said land from said ditch by gravity flow. That by reason of the lowering of the level of the water surface in said ditch as aforesaid, the plaintiff ever since has been and now is unable to obtain from said ditch water for the irrigation of said 25 acres of land by gravity flow after said flood head has passed and after on or about the 15th day of June of each and every year, without the use of the stop-gate hereinafter described.''

That the use of the stop-gate by plaintiff would occasion a loss so small that it would be negligible; that a pumping plant has been established by the corporation to which plaintiff contributes, which was coincident with the enlargement of the ditch of a capacity of 2,500 inches of water located below plaintiff's stop-gate for the purpose of pumping water from Snake river into the ditch to augment the supply of more than 75 per cent of the stockholders and water-users who are located below the pumping plant; that under a contract with the United States the defendant company permitted a railroad bridge to be constructed across the ditch in 1928 at a point below plaintiff's stop-gate and above the pumping plant, which bridge restricts the capacity of the ditch at that point to a width of about 11 feet; that the four piers of said bridge are diagonal with the thread of the stream and cause excessive erosion of the banks of the ditch above and below the same; that under said agreement said bridge is to remain across said ditch for the period of

the construction of the system of the Owyhee Irrigation district and that said period is estimated as being from three to seven years; that the Bureau of Reclamation was not and has not been ordered to remove said obstruction from said ditch.

We do not deem the matter of plaintiff's water right to depend on the mere adoption or a change of a by-law of the corporation. The whole mutual arrangement, issuing to plaintiff's predecessor certificates of stock representing a certain water right and the use thereof by them and plaintiff for more than 10 years, with the assent of the corporation, constituted a contract for so much water and vested a right in plaintiff to use the same in the manner of use before the ditch was changed. This right could not lawfully be taken away from plaintiff by the corporation by so changing the ditch as to prevent plaintiff from using his rightful amount of water.

The enforcement of the order or resolution of the directors to remove plaintiff's stop-gate would deprive him of the privilege of using the water from the ditch on about 25 acres of land in accordance with his contract right, which is appurtenant to the land, and which had been so used thereon for more than 10 years prior to the change made in the ditch.

It is claimed on the part of defendant that the change was only a cleaning out of the ditch, but the testimony clearly shows that the ditch was widened and deepened and its carrying capacity increased 25 per cent, which necessarily lowered the surface of the water in the ditch at times when the same amount of water was available from the river, as that flowed in the ditch prior to the enlargement thereof, or when the water begins to recede in the early summer.

Notwithstanding the fact that there might be a small retardation of the water in the ditch and a corresponding decrease in the flow below plaintiff's diversion, he is entitled to his equitable share of the water.

It does not necessarily follow that the lower water users on the ditch would be deprived of their rightful amount of water. This matter should be regulated by apportioning to each water user his just quantity and leave no room for a "grab game" to augment the amount of water to one at the expense of another. In other words, it is a matter of administration of the ditch according to the rights of all.

Believing that the decree of the trial court is right, it is affirmed.