Argued September 13, reversed November 24, 1971

# BARENDSE ET AL, *Appellants, v.* KNAPPA WATER ASSOCIATION, *Respondent.*

490 P2d 990

*Jeanyse R. Snow,* Astoria, argued the cause for appellants. With her on the briefs were Macdonald, Dean & McCallister.

*George C. Fulton,* Astoria, argued the cause for respondent. On the brief were Anderson, Fulton, Lavis and Van Thiel.

McALLISTER, J.

This is a declaratory judgment proceeding in which plaintiffs Clarence Barendse and Arne Oja, doing business as Knappa Mobile Court, seek to establish that the defendant Knappa Water Association is without authority to charge them a higher rate for water than the rate charged other members and that the rate charged plaintiffs was discriminatory. The trial court held in favor of the association on both contentions and plaintiffs appeal.

The facts are not in dispute. The parties agree that Knappa is an unincorporated agricultural area in Clatsop County, which includes private residences, farms and a number of businesses, including two trailer courts and an unspecified number of dairy farms. The Knappa Water Association is not a water district or other form of municipal corporation. On

the contrary, it is a private cooperative association organized under the laws of Oregon, which supplies water to its members. Plaintiffs, as owners of a trailer court have a membership and get water from the association.

Before 1970 the association charged its members a uniform flat monthly rate which entitled the member to 2,000 gallons of water. If a member used more than 2,000 gallons per month he was charged for the excess on a declining scale so that as the amount of water increased the rate per gallon decreased.

In January 1970 the association raised the flat monthly rate charged each member from $4 to $5.[1] At the same time the association notified plaintiffs that instead of one flat, monthly charge of $5 for their trailer court they would be charged a flat monthly rate of $5 for each occupied trailer space in the court. 2,000 gallons of water would be furnished for each occupied trailer space for which a minimum monthly rate was charged.

Under the new schedule, plaintiffs, in addition to paying a drastically increased flat rate charge each month, would not get the benefit of the declining rate per gallon for the water used in excess of the minimum until the total of the 2,000 gallons allowed for each occupied trailer space had been used. In other words, if 10 trailer spaces were occupied during a particular month, plaintiffs would be charged a minimum of $50

---

[1] There was evidence that for some time prior to January, 1970, plaintiffs had been charged $1 per month for each occupied trailer space in lieu of the minimum fee charged other users. The bills received by plaintiffs were not itemized and plaintiffs testified that they were unaware that their bills included this charge. The association does not rely in any way on plaintiffs' payment of the charge in the past.

regardless of the amount of water used and would not have the advantage of the declining rate on any excess water until the trailer court as a whole had used 20,000 gallons. Plaintiffs protested this drastic increase in the rate charged for the water furnished to their trailer court and when the association persisted in attempting to collect the new rate, plaintiffs brought this proceeding.

Since the association relies entirely on its by-laws for its authority to charge plaintiffs more than other members, we must examine the relevant portion of the bylaws which, in effect, form a contract between the association and its members. *McConnell v. Owyhee Ditch Co.*, 132 Or 128, 132, 283 P 755 (1930) ; 8 Fletcher, Cyclopedia of Corporations 757-761, § 4198.

Article V provides what persons or organizations may become members:

"* * * Any bona fide owner or occupant of a farmstead or dwelling, any bona fide owner or operator of an industrial installation or commercial establishment, and any bona fide public or non-profit institution * * *."

Article IX provides that the board of directors elected by the members shall have, inter alia, the following powers:

"d. To prescribe, adopt and amend, from time to time, such equitable *uniform* rules and regulations as, in their discretion may be deemed essential or convenient for the conduct of the business of the affairs of the association * * *. (Emphasis supplied.)

* * * * *

"f. To fix the charges to be paid by each member for services rendered by the association to him, the time of payment and the manner of collection."

The bylaws require the association to install and maintain water distribution lines and a service line to the property of each member. Each member is responsible for installing and maintaining the pipe lines necessary to convey the water from the boundary of his property to the place of use.

The rights of the members to the purchase and delivery of water are specified with particularity in Article XI, § 3, as follows:

"Each member shall be entitled to purchase from the association * * * such water for domestic, livestock, garden, industrial and commercial purposes as a member may desire, * * *. Each member shall be entitled to have delivered to him through a single service line only such water as may be necessary to supply the needs of the persons residing in a single dwelling and of the livestock owned by such persons and to irrigate a garden of not to exceed one-quarter acre, or such water as may be necessary to supply the industrial or commercial needs of the member. The water delivered through each service line shall be metered and the charges for such water shall be determined separately, irrespective of the number of service lines owned by a member."

It will be noted that Article XI, § 3, provides for three different types of use: (1) residential (including livestock and garden), (2) industrial, and (3) commercial, and provides that a member is entitled to only enough water through a single service line to supply his needs for a single type of use.

Under the bylaws two or more residential users are not entitled to water from the same service line for one minimum fee. By the same token, two or more commercial users would not be entitled to water from the same service line for one minimum fee. Likewise,

a single member is not entitled to water for both residential use and commercial use from the same line for one minimum fee. The bylaws require a separate service line and meter for each separate use by a single member whether domestic or industrial or commercial.

The association stipulates that plaintiffs' trailer court constitutes a commercial use within the meaning of the bylaws. It is, therefore, clear that under Article XI, § 3, plaintiffs are entitled to receive, through a single service line, all the water necessary to supply their commercial needs. The association does not contend otherwise.

We turn next to the provisions of the bylaws authorizing the board to fix the rate for water furnished by the association to its members. Article XI, § 5, provides as follows:

"The Board of Directors shall, prior to the beginning of each calendar year, determine the flat minimum monthly rate to be charged each member during the following calendar year for a specified quantity of water, such flat minimum monthly rate to be payable irrespective of [w]hether any water is used by a member during any month, and the amount of additional charges, if any for additional water which may be supplied the members, * * *."

Under the above provisions of Article XI, § 5, each member is to be charged a "flat monthly rate" for a "specified quantity of water." This flat minimum monthly rate applies separately to each service line because section 3 provides that the charges for the water delivered through each service line is to be determined separately.

■ We find nothing in the bylaws that permits discrimination between members. As we read the bylaws,

members are accorded equal status throughout. They are required to have separate lines for separate uses, but there is no suggestion that those separate uses are not to be treated uniformly. Rules and regulations made by the board are required to be uniform. In light of the bylaws as a whole, we interpret Article XI, § 5, to provide that each member shall be charged a flat minimum monthly rate for each service line and that this flat minimum monthly rate as well as the additional charges for water in excess of the minimum shall be the same for each member.

In its brief in this court the association makes only two contentions in support of its alleged authority to charge plaintiffs a higher rate than it charges other members. It first contends that the use of the words "each member" in Article IX, § 1 f, and Article XI, § 5, authorized the board to fix a different rate for each member of the association. This contention is not emphasized, and with good reason. It proves too much and, if adopted, would permit wholesale capricious discrimination in the rates charged different members.

Defendant next contends that it is entitled to fix different rates for different classes of users, i.e., residential, industrial, and commercial. This contention has a superficial appeal, but, under the facts of this case, has no substance. In the first place, there is no provision in the bylaws which even suggests authority to charge different rates to different classes of users. On the contrary, Article XI, § 5, mandates that the board of directors shall determine, before the beginning of each year, a flat minimum monthly rate to be charged each member during the following calendar year for a designated quantity of water. There is no authority expressed, and we find none implied, to determine different minimum monthly rates for each

class of users. The reasonable implication of this provision is that a single rate shall be established and that all three classes of users are to be charged the same rate.

Secondly, the association offered no evidence whatever to justify charging a higher rate to one class of user than it charges to other classes of users. As we pointed out in *Kliks et al v. Dalles City et al,* 216 Or 160, 335 P2d 366 (1959), any classification of users must be reasonable. There is no factual basis in the evidence for charging a different rate to commercial users than is charged to residential users or industrial users. The association concedes that other members use more water than plaintiffs, although the evidence does not disclose whether they are residential, industrial, or commercial users.

In the third place, even if we assume that the board is entitled to discriminate between classes of users there is no evidence that the board has established a uniform rate for all commercial users. The evidence establishes only that the board has imposed a higher rate on commercial users that operate trailer courts and multiple dwelling units. The evidence is vague as to how many other members are commercial users, but the record does indicate that only the trailer courts and one fourplex and one or two duplexes are charged the higher rate. To justify a higher rate for commercial users it would seem that the higher rate should be imposed on all commercial users rather than a selected few.

And, lastly, we point out that the authority of the board of directors to fix rates is prescribed by the bylaws as well as the classification of users and that the bylaws can only be changed by the members. The

record contains no evidence that the members of the association have considered any change in either the prescribed classification of members or the basis of fixing rates.

■ A cooperative association, although it may deal with its members upon any reasonable basis, may not discriminate among them unreasonably or unfairly. *Milk Producers, Inc. v. Campbell,* 459 SW2d 114, 117 (Ark, 1970); *Bertram v. Danish Creamery Ass'n,* 120 Cal App 2d 458, 261 P2d 349, 351 (1953); *Benson Coop Creamery Ass'n v. First District Ass'n,* 284 Minn 335, 170 NW2d 425, 428 (1969). The evidence in this case demonstrates that the classification in which the board has placed plaintiffs is an unreasonable one.

Our opinion in *Kliks v. Dalles City,* supra, contains an exhaustive examination of the factors which may be considered in establishing different rates for water service. Although the supplier in that case was a municipality, the same factors are properly considered in determining whether classification of members by a cooperative is reasonable in a particular case. In *Kliks* we held that a classification which treated apartment houses as aggregates of individual dwellings, denying them the lower commercial rate at which hotels, motels, and other commercial establishments were charged, was unreasonable. We said that a classification of users based solely on the nature of the use to which the water was put could not stand. The factors which we considered material are summarized in the following language:

"* * * Our task is to test the classification for its reasonableness. Reasonableness here means that the distinction made can be justified in light of the purpose for which it was created. The service rendered to these various customers by the city is

not significantly different. In each case, the water is fed to the building through a single meter; a single account is kept for each customer; a single monthly billing is made to each of them; in each case the responsibility upon the city for repairs, replacement and service is essentially the same. In the language of Ford v. Rio Grande Valley Gas Co., 141 Tex 525, 174 SW2d 479 (1943), 'the material billing factors are substantially the same.' 141 Tex 525, 527, 174 SW2d 479, 480. If they are substantially the same for the customers placed in separate classes, the classification cannot be sustained. If the material billing factors are different, a classification based upon such differences is satisfactory. These factors may include the quantity used, the time of use, the manner of service, or any other factor relating to the cost of furnishing the service. * * *" 216 Or at 185-186.

In the present case, the evidence does not show that any of the "material billing factors" are different in the case of plaintiffs than in the case of other members. There is a single service line and a single meter. Only one account need be kept for plaintiffs, and a single bill is sent them each month. The association's costs for maintenance and for accounting are not significantly different than for other members. No significant differences relating to the cost of furnishing the water were shown. The only reason given by the president of the association for the increase charged plaintiffs and three or four other commercial users was that the association needed more income. He testified:

"Q All right. Was the—what was the object of the—or the objective of the board in placing this $5.00 per trailer, call it a surcharge, on the bill?

"A We had our books audited, which the Federal government requires every year, and we have quite an obligation to meet."

It follows that the classification in question is unauthorized and discriminatory.

The judgment of the trial court is reversed.