Argued June 3, affirmed September 5, 1975

DENTEL ET AL, *Appellants, v.* FIDELITY
SAVINGS AND LOAN ASSOCIATION,
*Respondent.*

539 P2d 649

*Mark A. McCulloch,* Portland, argued the cause for appellants. With him on the briefs were Powers & McCulloch, Portland.

*Douglas E. Kaufman,* Tillamook, argued the cause for respondent. With him on the brief were McMinimee & Kaufman, Tillamook.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

DENECKE, J.

The issue is whether the directors of a state authorized savings and loan association can eliminate the voting rights of depositors and borrowers, granted by the association's bylaws, by amending the bylaws.

ORS 722.310(2) provides that members of savings and loan associations shall be stockholders "and such others as the bylaws may prescribe. Memberships may be issued to borrowers of and investors in the association with such rights and liabilities as may be allowed by the bylaws."

The bylaws of the defendant association provided that savings account holders and borrowers would be members. The bylaws further provided that each stockholder would have one vote per share, each savings account holder would have one vote per $100 deposited and each borrower would have one vote.

ORS 722.070(2) provides that members may vote on amending the articles of incorporation or the bylaws. The bylaws provide the members shall elect the Board of Directors. ORS 772.070(2) also provides the bylaws can be amended, after securing the approval of the corporate commissioner, by a vote of a

majority of the members or three-fourths of the directors.

At a duly constituted directors meeting, three-fourths of the directors voted to amend the bylaws, eliminating borrowers and savings deposit holders as members. The board had previously secured the approval of the corporation commissioner to the amendment.

The plaintiffs' argument is that their voting rights are "contractural and vested rights" and cannot be eliminated by a change in the bylaws.

■ The bylaws of the corporation have been termed a contract between the members of the corporation, and between the corporation and its members. *Barendse v. Knappa Water Assn.,* 260 Or 356, 359, 490 P2d 990 (1971). The articles of incorporation constitute "a contract between the corporation and the state, between the corporation and its owners, and between the owners themselves." Lattin, Corporations, 570, § 156 (1971).

The problem of whether bylaws can be amended and thereby change the rights of members of the corporation is the same as the problem of whether the articles can be amended. *Metzger v. George Washington Memorial Park,* 380 Pa 350, 110 A2d 425, 429 (1955). Most of the cases and writings concern changes in the articles.

Whether a corporation can amend its articles or its bylaws and thereby change the rights of its members has been the subject of numerous judicial opinions and writings. For many years state statutes have provided that a corporation is authorized to amend its articles. Also for many years, statutes, articles, or bylaws have provided that the corporation could amend its bylaws. Despite this universal authorization, the courts have held that certain rights granted

members or stockholders by the articles or the bylaws cannot be eliminated through the amendment of articles or bylaws.

Some years ago when a court held that a right granted by the articles or bylaws could not be taken away by an amendment, the court stated that the right could not be taken because it was a "vested right," a "property right," or a "contract right." This court used that terminology. *McConnell v. Owyhee Ditch Co.*, 132 Or 128, 136, 283 P 755 (1930).

The "vested rights" terminology has been attacked as being confusing and meaningless. For example, see *Davison v. Parke, Austin & Lipscomb, Inc.*, 285 NY 500, 35 NE2d 618, 622 (1941). A corporation scholar has stated: " 'Vestedness' is the legal conclusion rather than the reason." Latty, *Fairness — The Focal Point in Preferred Stock Arrearage Elimination*, 29 Va L Rev 1, 4 (1942). Section 58 of the Model Business Corporation Act has, in essence, swept away the "vested rights" doctrine.[1] That section was adopted as ORS 57.355 of the Oregon Business Corporation Act. The Oregon Business Corporation Act is applicable to savings and loan associations. ORS 722.020.

The Model Act swept away the vested rights doctrine by providing in detail what amendments a corporation can make to its articles. For example, ORS 57.355 (f) provides that a corporation can amend its articles, "To exchange, classify, reclassify or cancel all or any part of its shares, whether issued or

---

[1] The comment to the Model Business Corporation Act states:

"The broad power to amend conferred by the Model Act is intended to lay at rest the 'vested rights' doctrine * * *.

"One of the major purposes of the Model Act was to sweep aside the complexities of judicial decisions on vested rights which were increasingly handicapping the conduct of business through the corporate form. * * *." 2 Model Business Corporation Act Annotated (2d ed), 225, § 58.

unissued." Subsection (g) provides "\* \* \* [T]o change the preferences, limitations and the relative rights in respect of all or any part of its shares, whether issued or unissued." Subsection (j) provides: "To create new classes of shares having rights and preferences either prior and superior or subordinate and inferior to the shares of any class then authorized, whether issued or unissued."

However, even with the decline of the "vested rights" approach, the courts have not held that a member of a corporation can be deprived, by amendment, of all rights created in the articles or bylaws. No definitive terminology has been developed. The courts and the writers have turned to the more indefinite tests of "fairness," "good faith," "reasonableness," and lack of "constructive fraud." Henn, Corporations (2d ed), 712, § 345. Lattin, Corporations (2d ed), 586, § 160; Latty, supra (29 Va L Rev 1), Halloran, *Equitable Limitations on the Power to Amend Articles of Incorporation,* 4 Pac L J 47 (1973); Note, 37 Cornell L Q 768, 774 (1951-52).

For example, in *Clarke v. Gold Dust Corporation,* 106 F2d 598 (3d Cir 1939), plaintiff was a 7 per cent noncumulative preferred stockholder of American Linseed. American Linseed merged into Gold Dust Corp. As one of the mechanics of effecting the merger, American Linseed amended its articles to eliminate the 7 per cent noncumulative preferred and offered alternatives. The plaintiff claimed the amendment and merger were void. The court held to the contrary: "That amendment was binding upon the appellant [plaintiff] unless it appears that the amendment was unfair and inequitable and worked injustice to the appellant." 106 F2d at 601.

We have adopted the term of "fairness" in other fields when we have not been able to find a more precise standard. For example, see *State ex rel*

*White Lbr. v. Sulmonetti,* 252 Or 121, 448 P2d 571 (1968), interpreting the long-arm statute; *Hartford Accident v. Pyle,* 271 Or 97, 530 P2d 843 (1975), when judgments can be set off.

Courts have held that an elimination or dilution of a stockholder's voting rights, under the circumstances, was "fair" and, therefore, valid. Cases collected in Note, 37 Cornell L Q 768 (1951-52).

For example, in *Topkis, Ex'r. v. Delaware Hardware Co.,* 23 Del Ch 125, 2 A2d 114, 119 (1938), two individual defendants acquired an equal number of shares of the common stock in a corporation with the help of Louis Topkis who partially paid for the stock in the corporation. Nonvoting preferred stock in equal quantities was issued to the two defendants. The defendants sold 20 shares of voting common stock to Louis Topkis who then held the balance of voting power. Topkis died and plaintiff, his son, acquired his father's 20 shares. The defendants had been content to have Louis Topkis be an arbiter between them, but when the plaintiff son obtained the 20 shares they were dissatisfied. The defendants solved their problem by amending the articles to provide that the voting power of the common was cancelled and the voting power was placed exclusively in the holders of the preferred, the defendants. The court of chancery upheld the amendment:

"* * * The question in such cases is whether the supposed advantage which the exercise of the power is said to intend to secure, is one that a court of equity would pronounce to be unfair to others who are affected thereby. Where as here the exercise of the power is one that is designed to change voting rights as allowed by the statute and the change is not aimed to accomplish an ulterior purpose beyond itself that can be denominated as inequitable, no ground exists for interference. * * *." 23 Del Ch at 135.

In *Metzger v. George Washington Memorial Park,* supra (380 Pa 350), the corporation had 2,000 shares of voting common and an unstated number of cumulative preferred shares. The articles provided that the preferred shareholders were to have voting rights if the corporation defaulted in the payment of four or more semi-annual dividend payments. The corporation defaulted on 11 semi-annual dividend payments. The articles were amended by a meeting of both the preferred and common stockholders to provide that the preferred shareholders would have voting rights regardless of whether there was any default in the payment of dividends. The court held the amendment valid.

On the other hand, the chancery division of the trial court in *Faunce v. Boost Co.,* 15 NJ Super 534, 83 A2d 649 (1951), held that an amendment changing the voting rights of stockholders was void. The defendant held about two-thirds of the stock. The defendant had a royalty agreement with the company whereby he transferred the rights to a secret formula to the company in return for an agreement whereby the company would issue the defendant one and one-half shares of stock for every new share issued. This royalty agreement hindered obtaining capital. The defendant relinquished his rights under the royalty agreement for an amendment to the articles. The amendment authorized Class A shares which were to be issued share for share for the stock outstanding. Class A shares were to receive all the dividends and assets upon dissolution. One hundred shares of Class B stock were authorized, all of which were to go to defendant and were to have sole voting rights. Plaintiff owned less than 10 per cent of the stock. The court held the amendment was invalid for the reason, among others, that it was inequitable.

We hold the trial court was correct in con-

cluding that the amendment was valid. The trial court did not express any standard by which to judge the validity of an amendment to bylaws which eliminates a right. We conclude the amendment was valid because it was not unfair.

From the record it appears that two business concerns were striving to acquire the defendant. One apparently acquired control of the stock and the other sought to thwart the advantage of stock control by getting control of the votes of nonstockholder members and depositing a large amount of money in a savings deposit. We find this is material because if the evidence had shown that the basic motive for the amendment had been to deprive the nonstock holding members of a valuable asset for the pecuniary benefit of the stockholders, we might have reached a different decision.

The plaintiffs have not pointed out, nor have we discovered, that any pecuniary damage is likely to occur to plaintiffs because of the amendment. The only monetary right of the savings deposit holders is to interest on their deposits and it is extremely unlikely that the amendment will affect that. The existing bylaws provide that upon 30-days notice the defendant can redeem any savings account by paying out the withdrawal value to the holder.

We know of no damage which can occur to the borrower members because of the amendment.

The plaintiffs have not contended they were without notice that their membership was derived from the bylaws, and the bylaws could be amended by the directors. The plaintiffs also did not contend that they relied upon their right to vote in their financial dealings with the defendant.

Affirmed.