IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DARREN LEE ARENDS, | ) | |
| | ) | |
| Petitioner, | ) | No. 103068-1 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | Filed: August 14, 2025 |
| Respondent. | ) | |
| | ) | |

MADSEN, J.—Prior to 2023, Washington's firearm restoration statute contained

two venue provisions: a person could file a petition in the county where they reside or in

the county that prohibited them from possessing firearms. Former RCW 9.41.040(4)(b)

(2011). In 2023, the legislature narrowed the venue options to allow filing *only* in the

county that imposed the prohibition. LAWS OF 2023, ch. 295, § 4(3)(a); RCW

9.41.041(3)(a). Darren Arends filed his restoration petition in his county of residence a

little over two weeks after the 2023 amendment took effect, arguing that he had a vested

right to proceed under the former statute. Though Arends frames his case as one of

vested rights, it is more properly analyzed as a question of venue.

The statutory options to file in a particular county in former RCW 9.41.040(4)(b) go to venue, and rights to venue do not vest. Rather, venue is determined by the legislature, which has the authority to add or remove locations in which to file restoration petitions. The legislature cannot, however, limit the *jurisdiction* of the superior courts to hear those petitions. Any superior court in Washington retains original jurisdiction to hear a firearm rights restoration petition. Therefore, we reverse the Court of Appeals.

BACKGROUND

In 1988, Arends was convicted of grand theft in South Dakota. This felony offense resulted in the loss of Arends's firearm rights. RCW 9.41.040(2), .041(2). In August 2023, Arends petitioned to restore his rights in Washington, specifically in Snohomish County Superior Court. Arends filed his petition *after* the legislature amended the restoration statute repealing former RCW 9.41.040(4) and enacting RCW 9.41.041. Arends argued that upon completing the former statutory requirements, his firearm restoration rights vested, and he was bound by the former rather than the most recently enacted version of the statute. The State opposed the motion, arguing that Snohomish County was not the correct venue because the firearm prohibition was entered in South Dakota; the State also argued that Arends had not completed the required sentencing conditions. The Snohomish County Superior Court agreed with the State and denied Arends's petition.

The Court of Appeals affirmed the trial court's ruling in a published decision. *Arends v. State*, 31 Wn. App. 2d 257, 268, 548 P.3d 553 (2024). Arends sought review in

this court, which we granted. *Arends v. State*, 3 Wn.3d 1012 (2024). We received an amici curiae brief in support of the State from the Brady Center To Prevent Gun Violence, Giffords Law Center To Prevent Gun Violence, Northwest Justice Project, Sexual Violence Law Center, and Alliance for Gun Responsibility. The Washington Association of Criminal Defense Lawyers also submitted an amicus curiae memorandum in support of Arends.

DISCUSSION

1. The Vested Rights Doctrine

The doctrine of vested rights has not always been a model of clarity. *See Dentel v. Fid. Sav. & Loan Ass'n*, 273 Or. 31, 34, 539 P.2d 649 (1975) ("The 'vested rights' terminology has been attacked as being confusing and meaningless."). This is largely due to the evolution of the doctrine away from its historical usage. In the 19th century, vested rights were central to determining retroactivity. 2 NORMAN J. SINGER & J.D. SHAMBIE SINGER, STATUTES AND STATUTORY CONSTRUCTION § 41:4, at 384 (8th ed. 2022). A statute that altered a vested interest would be viewed as operating retrospectively, while a statute that altered a nonvested interest was viewed as operating prospectively. *Id*. at 385. The analysis focused on the event legally necessary to establish a vested interest, serving as a benchmark for determining retroactivity. *Id*.

The doctrine has become less "coherent" as historical distinctions between property and expectancy, or between rights and remedies, no longer determine whether an interest defined by current law is immune from alteration. *Id*. at 396-97. This

3

organizing principle has receded and courts have offered various interpretations of the doctrine's meaning, and also which rights are immune from retroactive legislation. *Id*. at 397-98.

Washington's vested rights doctrine reflects this evolution. Vested rights in Washington as originally judicially recognized applied to development rights in property interest. *Abbey Rd. Grp., LLC v. City of Bonney Lake*, 167 Wn.2d 242, 250, 218 P.3d 180 (2009) (plurality opinion) (citing *Erickson & Assocs. v. McLerran*, 123 Wn.2d 864, 870, 872 P.2d 1090 (1994), *overruled in part by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019)), *overruled in part by Chong Yim*, 194 Wn.2d 682; 36 MICHAEL F. CONNELLY, WASHINGTON PRACTICE: WASHINGTON LAND USE § 11:1, at 432 (2024). The doctrine stems from the constitutional principle of fundamental fairness. *Erickson*, 123 Wn.2d at 870; *see also Serv. Emps. Int'l Union Loc. 925 v. Dep't of Early Learning*, 194 Wn.2d 546, 553, 450 P.3d 1181 (2019) ("The vested right doctrine is a constitutional protection for property rights."); *cf. Town of Woodway v. Snohomish County*, 180 Wn.2d 165, 173, 322 P.3d 1219 (2014) ("While it originated at common law, the vested rights doctrine is now statutory."), *overruled in part by Chong Yim*, 194 Wn.2d 682.

In the area of land use, the idea of vested rights entitles developers to have a land development proposal processed under the regulations in effect at the time a complete building permit application is filed, regardless of later changes in zoning or other land use regulations. *Abbey Rd.*, 167 Wn.2d at 250.

4

The doctrine of vested rights is not limited to land use. Other types of rights can vest, such as a juvenile's right to vacate and seal their records. *State v. T.K.*, 139 Wn.2d 320, 987 P.2d 63 (1999). Other rights have been held not to vest, including the right to a particular procedure and venue. *Denver & Rio Grande W. R.R. Co. v. Bhd. of R.R. Trainmen*, 387 U.S. 556, 563, 87 S. Ct. 1746, 18 L. Ed. 2d 954 (1967) (there is no vested right in any given mode of procedure); *Dougherty v. Dep't of Lab. & Indus.*, 150 Wn.2d 310, 316, 76 P.3d 1183 (2003) (venue is procedural); *Tellier v. Edwards*, 56 Wn.2d 652, 654, 354 P.2d 925 (1960) ("[A] party does not have a vested right in any particular form of procedure." (emphasis omitted)).

2. Firearm Restoration Statute

At issue in this case is the filing location for firearm restoration petitions. The legislature created the right to firearm restoration in 1995 with certain requirements including, among other things, the conviction was not a felony sex offense; the convicted individual spent five consecutive years in the community without further convictions; and when petitioning for restoration, the offender lacked pending criminal charges. LAWS OF 1995, ch. 129 § 16(4).

A year later, lawmakers amended the statute. The 1996 amendments lowered the waiting period to apply for certain offenders and added a requirement that individuals seeking restoration must complete all sentencing conditions. LAWS OF 1996, ch. 295, § 2(4)(b)(ii). In 2011, lawmakers added venue provisions. LAWS OF 2011, ch. 193 § 1(4)(b). Former RCW 9.41.040(4) provides,

(b) An individual may petition a court of record to have [their] right to possess a firearm restored under (a) of this subsection (4) only at:
(i) The court of record that ordered the petitioner's prohibition on possession of a firearm; or
(ii) The superior court in the county in which the petitioner resides.

The Court of Appeals interpreted this subsection as a venue provision. *State v. Manuel*, 14 Wn. App. 2d 455, 460, 471 P.3d 265 (2020). In *Manuel*, the State argued that a superior court lacked jurisdiction to restore firearm rights for the petitioner's convictions in other counties. *Id.* at 459-60. The Court of Appeals read the provision as concerning venue rather than a jurisdictional limit in order to uphold its constitutionality. *Id.* at 460 (citing *ZDI Gaming, Inc. v. Wash. State Gambling Comm'n*, 173 Wn.2d 608, 616, 268 P.3d 929 (2012)).

In 2023, lawmakers again amended the statute. The legislature repealed former RCW 9.41.040(4)(b) and enacted RCW 9.41.041. LAWS OF 2023, ch. 295, § 4. Most relevant to this case is the legislature's removal of the option to file restoration petitions in the county of residence. *Id.* Now, petitioners must file in the superior court of the county that originally imposed the firearm prohibition. *Id.* at § 4(3)(a). The 2023 amendment became effective on July 23, 2023.

Arends has consistently argued that he has a vested right to file his restoration petition in his county of residence. That is, Arends claims a vested right in the restoration procedure, viz., the *venue* provision of former RCW 9.41.040(4)(b). But this court

6

decided long ago that there is no vested right to a form of procedure like venue. *Dougherty*, 150 Wn.2d at 316; *Tellier*, 56 Wn.2d at 654.[1]

In short, Arends frames his claim as one of vested rights, but it is more properly understood as one of venue and the jurisdiction of superior courts to hear firearm restoration petitions. We therefore resolve the case under that analytical framework.

3. Venue and Jurisdiction

Jurisdiction refers to a court's fundamental power and authority to act. *ZDI Gaming*, 173 Wn.2d at 616. Our state constitution provides that "[t]he superior court shall also have original jurisdiction in *all cases* and of *all proceedings* in which jurisdiction shall not have been by law vested exclusively in some other court." WASH. CONST. art. IV, § 6 (emphasis added). We have interpreted this language as granting "'universal original jurisdiction'" to the superior courts. *Ralph v. Dep't of Nat. Res.*, 182 Wn.2d 242, 252, 343 P.3d 342 (2014) (quoting *Moore v. Perrott*, 2 Wash. 1, 4, 25 P. 906 (1891)). This provision "'precludes any subject matter restrictions as among superior courts'" because all superior courts have the same authority to adjudicate the same types

---

[1] The dissent argues that we should overrule *T.K.*, 139 Wn.2d at 335, and *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 813, 272 P.3d 209 (2012), as binding authorities in the vested rights context. Dissent at 5-8. No party has asked the court to overrule these cases, and we do not abandon precedent unless we are convinced that precedent is clearly incorrect and clearly harmful. *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 278, 208 P.3d 1092 (2009) ("In Washington, stare decisis protects reliance interests by requiring 'a clear showing that an established rule is incorrect and harmful before it is abandoned.'" (internal quotation marks omitted) (quoting *State v. Devin*, 158 Wn.2d 157, 168, 142 P.3d 599 (2006))). Further, the dissent appears to misread *T.K* by conflating the opinion's discussion on the triggering event and vested rights. Dissent at 5-6. *T.K.* first addressed the event triggering application of an amended statute and analyzed vested rights as an "alternative[]" basis for relief. 139 Wn.2d at 332.

of controversies. *ZDI Gaming*, 173 Wn.2d at 616 (quoting *Shoop v. Kittitas County*, 149 Wn.2d 29, 37, 65 P.3d 1194 (2003) (*Shoop* II)); *see Dougherty*, 150 Wn.2d at 317.

Washington's constitution also constrains the power of the legislature to create or limit jurisdiction. *ZDI Gaming*, 173 Wn.2d at 616 (citing WASH. CONST. art. IV, §§ 4, 6). The legislature may expand and shape jurisdiction, but any legislation that partially or wholly divests a constitutional court of its constitutional powers is void. *Id*. (quoting *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 415, 63 P.2d 397 (1936)). Jurisdiction turns on the type of controversy involved. *Id*. at 617-18.

Unlike subject matter jurisdiction, venue can be controlled by legislation. *Shoop v. Kittitas County*, 108 Wn. App. 388, 396, 30 P.3d 529 (2001) (*Shoop* I). It is procedural. *Dougherty*, 150 Wn.2d at 316. Venue concerns the setting, location, or place where a court's power to adjudicate a case is exercised. *ZDI Gaming*, 173 Wn.2d at 618 (quoting *Dougherty*, 150 Wn.2d at 316). Venue rules limit the available forum in order to ensure a lawsuit's locality is logically related to the litigants or dispute's subject matter. *Shoop* I, 108 Wn. App. at 396. Statutes that require actions to be brought in certain counties are generally considered as specifying venue and generally construed "'not to limit jurisdiction of the state courts to the courts of the counties thus designated.'" *Dougherty*, 150 Wn.2d at 316 (quoting 77 AM. JUR. 2D, *Venue* § 44, at 651 (1997)).

Ordinarily, a plaintiff has the initial choice of venue. *Eubanks v. Brown*, 180 Wn.2d 590, 595, 327 P.3d 635 (2014). If venue is not proper as to the defendant, the

8

defendant may either waive their objection to the erroneous venue by failing to object or move to transfer the case to the proper venue. *Id*.

As previously stated, the 2023 amendment to former RCW 9.41.040(4) removed one of the filing options for restoration petitions and limited petitioners to filing in the county that originally imposed the prohibition. LAWS OF 2023, ch. 295, § 4. Yet every superior court in Washington has the original jurisdiction to hear these petitions. WASH. CONST. art. IV, § 6. The legislature has no authority to limit that jurisdiction. *ZDI Gaming*, 173 Wn.2d at 616. Even under the 2023 version of the restoration statute, a petitioner has a right to file their firearm restoration claim in Washington and any superior court in Washington has the jurisdiction to hear it. RCW 9.41.041; WASH. CONST. art. IV, § 6.

Here, Arends filed to restore his firearm rights in Snohomish County after the effective date of RCW 9.41.041. Under that version of the statute, Arends was required to file in South Dakota—where the firearm prohibition was originally imposed. But because Arends has the right to seek restoration in Washington, any superior court retains jurisdiction to hear it. Thus, Snohomish County Superior Court had the authority to consider the petition even if the venue was improper.[2]

---

[2] The dissent states that once a venue objection is made, a superior court can "*only* transfer or dismiss" the petition. Dissent at 9 (emphasis added). Generally, that is correct. However, here the petitioner has a right to file for firearm restoration, and no venue would be proper in Washington. Yet every superior court in Washington retains jurisdiction to hear these petitions, irrespective of whether venue is proper.

CONCLUSION

We reverse the Court of Appeals and remand the case to the Snohomish County

trial court to consider Arends's firearm restoration petition and determine whether he has

satisfied the substantive requirements pursuant to the amended version of RCW 9.41.040.

_____
Madsen, J.

WE CONCUR:

_____        _____
Stephens, C.J.

_____
Johnson, J.

                                                 _____
Whitener, J.

_____        _____
Gordon McCloud, J.                                           Mungia, J.

No. 103068-1

GONZÁLEZ, J. (dissenting) — We took review of this case to determine whether Darren Arends had a vested right to petition to restore his firearm rights in his county of residence, rather than in the court that imposed the firearm prohibition.  I would reach that question, and I would affirm the trial court's dismissal.  The vested rights doctrine should be used sparingly and only where statutorily or constitutionally compelled. The doctrine of vested rights does not encompass all legislatively created benefits. Because a broad application of the vested rights doctrine undermines the plenary power of the legislature to legislate, the handful of cases in which this court applied vested rights to resolve controversies other than contract or property disputes should be overruled or explicitly limited to their facts. I respectfully dissent.

Washington's vested rights doctrine is both unique and robust.[1] The defining feature of Washington's vested rights doctrine has been certainty. When a right

[1] *See* Gregory Overstreet & Diana M. Kirchheim, *The Quest for the Best Test To Vest: Washington's Vested Rights Doctrine Beats the Rest*, 23 SEATTLE U. L. REV. 1043 (2000) (explaining how Washington's rule began as the minority approach to vested rights and evolved into a distinct model that facilitates certainty in property development by establishing a clear date for vesting purposes); Roger D. Wynne, *Washington's Vested Rights Doctrine: How We Have Muddled a Simple Concept and How We Can Reclaim It*, 24 SEATTLE U. L. REV. 851 (2001)

*Arends v. State*, No. 103068-1 (González, J., dissenting)

vests, the rights holder knows what they have. *See, e.g.*, *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 278, 943 P.2d 1378 (1997) ("The purpose of the vested rights doctrine is to provide a measure of certainty to developers and to protect their expectations against fluctuating land use policy."); *Erickson & Assocs. v. McLerran*, 123 Wn.2d 864, 868, 872 P.2d 1090 (1994) ("This court rejected the reliance-based majority rule, instead embracing a vesting principle which places great emphasis on certainty and predictability in land use regulations."), *overruled in part by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019); *W. Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 50-51, 720 P.2d 782 (1986) ("Society suffers if property owners cannot plan developments with reasonable certainty, and cannot carry out the developments they begin."), *overruled in part by Yim*, 194 Wn.2d 682. In the land use context, Washington courts have historically promoted certainty by finding the applicant's development rights vest once the relevant application has been filed. *Noble Manor Co.*, 133 Wn.2d at 278; *see also State ex rel. Ogden v. City of Bellevue*, 45 Wn.2d 492, 496, 275 P.2d 899 (1954) ("An owner of property has a vested right to put it to a permissible use as provided for by prevailing zoning ordinances. The right

---

(tracing the history of the vested rights in Washington and identifying problems with the court's evolving application of the doctrine in the context of multipermit land use projects); Steve P. Calandrillo, Chryssa Deliganis & Christina Elles, *The Vested Rights Doctrine: How a Shield Against Injustice Became a Sword for Opportunistic Developers*, 78 OHIO. ST. L.J. 443 (2017) (outlining how Washington's distinct vested rights doctrine has enabled developers to undermine salutary changes in environmental and land use policy).

accrues at the time an application for a building permit is made.”); *Abbey Rd. Grp., LLC v. City of Bonney Lake*, 167 Wn.2d 242, 251, 218 P.3d 180 (2009) (plurality opinion); *Town of Woodway v. Snohomish County*, 180 Wn.2d 165, 172, 322 P.3d 1219 (2014) (“Our state employs a ‘date certain’ standard for vesting.”), *overruled in part by Yim*, 194 Wn.2d 682.[2]

The general rule is that “[d]ue process is violated if the retroactive application of a statute deprives an individual of a vested right.” *In re Marriage of MacDonald*, 104 Wn.2d 745, 750, 709 P.2d 1196 (1985) (citing *Lynch v. United States*, 292 U.S. 571, 576-80, 54 S. Ct. 840, 78 L. Ed. 1434 (1934)).[3] This is an unimpeachable principle when a right is actually constitutionally protected. But I fear we have expanded vested rights beyond that constitutionally mandated core

---

[2] To the extent that *Yim* abrogated these cases, *Yim* held only that state substantive due process claims regarding laws that affect property rights are subject to rational basis review, not the unduly oppressive test. *See* 194 Wn.2d at 690 (“the ‘unduly oppressive’ test recited in our precedent can no longer be interpreted as requiring heightened scrutiny because its legal underpinnings have disappeared”). *Yim* did not abrogate our date certain approach—*Yim* held that to the extent that we justified our date certain approach by referencing the unduly oppressive test, that test is no longer a valid justification. *Cf. Hull v. Hunt*, 53 Wn.2d 125, 128, 331 P.2d 856 (1958) (“‘The right accrues at the time an application for a building permit is made.’” (quoting *State ex rel. Ogden*, 45 Wn.2d at 496)).

[3] *MacDonald* involved a husband who filed for a dissolution of his marriage and who expected to be awarded his military retired pay based on our vested rights doctrine. 104 Wn.2d at 750. We specifically explained that his expectation in the continuance of existing law did not create a vested right and reasoned that doctrine was inapplicable in the context of our state’s community property tradition. “As between husband and wife while married, neither has a vested right to their property, nor does a trial court’s division of property create a vested right.” *Id.* (citing *Sparkman & McLean Co. v. Govan Inv. Tr.*, 78 Wn.2d 584, 587, 478 P.2d 232 (1970). Like *MacDonald*, there may be other cases that test the limits of the doctrine. While a handful of cases have stretched the doctrine of vested rights beyond its constitutional boundaries, this is not such a case.

and effectively made the policy choice to give greater protection to developers' rights rather than giving proper deference to the plenary power of the legislature. In so doing, I fear we have failed to give due weight to the legislature's policy choices in directing growth and protecting the environment. Our choice was based on this court's understanding of the constitutional values at stake. I accept that this court chose to treat development rights as vested when a proper application was filed. But the principles that animated that choice are limited to the property arena and simply do not apply to venue statutes like this one.

Simply put, a right does not vest merely because a party would have been entitled to a specific benefit or a claim had the applicable law remained unchanged. "A vested right, entitled to protection from legislation, must be something more than a *mere expectation* based upon an anticipated continuance of the existing law; *it must have become a title*, legal or equitable, *to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another*." *Godfrey v. State*, 84 Wn.2d 959, 963, 530 P.2d 630 (1975);[4] *see also Kellogg v. Nat'l R.R. Passenger Corp.*, 199 Wn.2d 205, 231, 504 P.3d 796 (2022) (holding that legislative amendments to our wrongful death statute did not violate due process

---

[4] This quote from *Godfrey* is attributable to an earlier case, *Gillis v. King County*, 42 Wn.2d 373, 377, 255 P.2d 546 (1953) (quoting 2 THOMAS M. COOLEY, A TREATISE ON CONSTITUTIONAL LIMITATIONS WHICH REST UPON THE LEGISLATIVE POWER OF THE STATES OF THE AMERICAN UNION 749 (8th ed. 1927)).

because Amtrak did not possess a vested right in the mere expectation that the prior version of the statute would not be amended to expand the class of beneficiaries).

Arends has made a cognizable argument, however, that he should be entitled to file his petition in Snohomish County based on *T.K. State v. T.K.*, 139 Wn.2d 320, 987 P.2d 63 (1999). To the extent *T.K.* supports his argument, it should be overruled as incorrect and harmful.

*T.K.* held that amendments that added new requirements to the juvenile sealing statute did not apply to young people who satisfied the prior statutory sealing requirements but who moved for relief after the effective date of the amendments. *Id*. *T.K.* relied on a case that treated a bank's perfected security interest as vested for the proposition that "[t]here are many cases . . . in which a preamendment version of a statute will continue to govern in cases arising prior to the amendment, particularly where vested rights or contractual obligations are affected." *Id*. at 327 (citing *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 832 P.2d 1303 (1992)). *T.K.* then analyzed the subject matter of the legislative provision to assess what event triggers the application of the statute. *Id*. at 332. *T.K.*'s triggering-event inquiry demonstrates it to be an outlier in this court's vested rights jurisprudence, as the answer has been the same since the 1950s—filing a procedurally compliant application for relief vests one's right under the statute.

*Arends v. State*, No. 103068-1 (González, J., dissenting)

Ultimately, we held that the triggering event was the completion of the statutory requirements for sealing, not the filing of a motion to seal. *Id.*

Other than *F.D. Processing*, *T.K.* did not rely on any of this court's vested rights cases, not even the cases *F.D. Processing* relied on. *See Gillis v. King County*, 42 Wn.2d 373, 378, 255 P.2d 546 (1953); *Miebach v. Colasurdo*, 102 Wn.2d 170, 685 P.2d 1074 (1984). *T.K.* itself resisted being pegged as a vested rights case—rebuking the State's claim that there is no vested right "in the continuation of existing statutory law." *T.K.*, 139 Wn.2d at 334 (citing *Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Rev. Bd.*, 127 Wn.2d 759, 768-69, 903 P.2d 953 (1995)). The court explained,

> Relying on this notion of "vested rights", the State contends that no rights vest unless a timely application is filed during the effective period of the ordinance under which a juvenile is seeking relief. The Court of Appeals properly rejected the State's invitation to import land use principles into cases like these.

*Id.* at 334-35 (citation omitted). Despite *T.K.*'s disavowal of being a vested rights case, we have treated *T.K.* as binding authority in our vested rights jurisprudence ever since.[5] To the extent *T.K.* can be read as a vested rights case, it should be

---

[5] *See State v. Varga*, 151 Wn.2d 179, 197-98, 86 P.3d 139 (2004) (contrasting Varga's vested rights argument with the court's analysis in *T.K.*); *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 811-13, 272 P.3d 209 (2012) (discussing the facts and analysis of *T.K.* and *Varga* and reasoning that Carrier's vested rights argument resembles *T.K.* "more closely"); *In re Est. of*

6

overruled. It is incorrect and, as it undermines the plenary power of the legislature to legislate, harmful. *See Deggs v. Asbestos Corp.*, 186 Wn.2d 716, 727-28, 381 P.3d 32 (2016) (quoting *In re Rts. to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)).

Because *T.K* has been so widely read as a vested rights case, it is wholly understandable that Arends asks us to analogize to *T.K.* and find that he has a vested right to restore his firearm rights under the expired statute. Arends is not the first litigant to analogize his claim to *T.K.* Leslie Varga relied on *T.K.* in his claim that he had a vested right to the "washed-out" status of his prior convictions. *State v. Varga*, 151 Wn.2d 179, 195, 86 P.3d 139 (2004). We distinguished Varga's claims from *T.K.* by doubling down on *T.K.*'s triggering event analysis and reasoning that "[u]nlike T.K., Varga could not exercise his alleged 'right' to the 'washed out' status of his prior convictions until he committed a new offense. T.K. on the other hand could have moved the court to expunge his juvenile adjudication under the former version of [the statute]." *Id.* at 197. Extending this rationale further, in *Carrier* we held that because "Carrier met all the conditions for vacating his conviction under the preamendment version of former RCW 9.95.240 . . . [t]he

---

*Haviland*, 177 Wn.2d 68, 79, 301 P.3d 31 (2013) (relying on the contrast between *Vargas* and *T.K.* in holding that Haviland's interest in her deceased husband's property was not vested); *Wash. State Ass'n of Counties v. State*, 199 Wn.2d 1, 20, 502 P.3d 825 (2022) (relying on *T.K.* for the proposition that rights may become vested upon the completion of statutory conditions).

State cannot apply the amendment retroactively to infringe Carrier's vested right in the vacated status of his conviction." *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 812-13, 272 P.3d 209 (2012).

To the extent these cases undermine the plenary power of the legislature to legislate except in the face of a constitutional constraint, they should be overruled as incorrect and harmful. Until *T.K.*, the satisfaction of procedural preamendment requirements did not create a vested right because satisfying preamendment requirements without moving for relief or submitting a procedurally compliant application simply conveys "'a mere expectation based upon an anticipated continuance of the existing law.'" *Carrier*, 173 Wn.2d at 811 (quoting *Godfrey*, 84 Wn.2d at 963).

Not overruling *T.K.* and *Carrier* risks the very certainty that our vested rights doctrine was once heralded for promoting. By relying on *T.K.* and *Carrier*, litigants can sit idly on claims as the statutory basis for such claims expire. After the statute has been amended, these same litigants will argue that their rights accrued under the preamendment version of the law, and if they prevail, they will obviate the intent of the legislature and its constitutional prerogative to set policy and create great uncertainty as to applicable rights. "The legislature's role is to set policy and to draft and enact laws." *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 506, 198 P.3d 1021 (2009).

*Arends v. State*, No. 103068-1 (González, J., dissenting)

Our deference to the legislature stems from our proper role within divided government. "It is neither the function nor the prerogative of courts to modify legislative enactments." *Anderson v. City of Seattle*, 78 Wn.2d 201, 202, 471 P.2d 87 (1970) (citing *King County v. City of Seattle*, 70 Wn.2d 988, 425 P.2d 887 (1967); *State v. Spino*, 61 Wn.2d 246, 377 P.2d 868 (1963)). By interpreting our vested rights doctrine to create a basis for Washingtonians to assert claims under expired laws that may be out of step with current public policy, we encroached on the legislature's mandate. "No one has a vested right in any general rule of law or policy of legislation which gives an entitlement to insist that it remain unchanged for one's own benefit." *Johnson v. Cont'l W., Inc.*, 99 Wn.2d 555, 563, 663 P.2d 482 (1983).

I concur with the majority this far: every superior court in the state has original jurisdiction over petitions like Arends'. Had the State not made a venue objection, the superior court could have entertained Arends' petition and restored his rights. But once a proper venue objection has been made, as it was here, the superior court could only transfer or dismiss.

Arends must follow the law as it was in place at the time he filed his petition. Under the law at the time, the Snohomish County Superior Court properly dismissed this petition. We should affirm that decision. Accordingly, I respectfully dissent.

9

González, J.

Yu, J.

Montoya-Lewis, J.

10